1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Attorney for Plaintiff*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVAR LILES, Individually and on Behalf of All Others Similarly Situated, <br><br> Plaintiff, <br><br> v. <br><br> SOUNDHOUND AI, INC., KEYVAN MOHAJER, and NITESH SHARAN, <br><br> Defendants. | Case No. <br><br> <u>CLASS ACTION</u> <br><br> COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS <br><br> <u>DEMAND FOR JURY TRIAL</u> |

Plaintiff Trevar Liles ("Plaintiff"), individually and on behalf of all others similarly situated, by Plaintiff's undersigned attorneys, for Plaintiff's complaint against Defendants, alleges the following based upon personal knowledge as to Plaintiff and Plaintiff's own acts, and information and belief as to all other matters, based upon, *inter alia*, the investigation conducted by and through Plaintiff's attorneys, which included, among other things, a review of the Defendants' public documents, conference calls and announcements made by Defendants, United States ("U.S.") Securities and Exchange Commission ("SEC") filings, wire and press releases published by and regarding SoundHound AI, Inc. ("SoundHound" or the "Company"), analysts' reports and advisories about the Company, and information readily obtainable on the Internet.

Plaintiff believes that substantial, additional evidentiary support will exist for the allegations set forth herein after a reasonable opportunity for discovery.

## NATURE OF THE ACTION

1.      This is a federal securities class action on behalf of a class consisting of all persons and entities other than Defendants that purchased or otherwise acquired SoundHound securities between May 10, 2024 and March 3, 2025, both dates inclusive (the "Class Period"), seeking to recover damages caused by Defendants' violations of the federal securities laws and to pursue remedies under Sections 10(b) and 20(a) of the Securities Exchange Act of 1934 (the "Exchange Act") and Rule 10b-5 promulgated thereunder, against the Company and certain of its top officials.

2.      SoundHound provides an independent voice artificial intelligence ("AI") platform that purportedly enables businesses across industries to deliver high-quality conversational experiences to their customers.

3.      At all relevant times, the Company has identified material weaknesses in its internal control over financial reporting.  Specifically, SoundHound has acknowledged that it has "lacked sufficient oversight of activities related to its internal control over financial reporting," and that due to "rapid business growth," "changes to existing controls or the implementation of new controls have not been sufficient to respond to changes to the risks of material misstatement to financial reporting, which [has] resulted in the Company not designing and maintaining effective controls related to substantially all accounts and disclosures," including "effective controls to verify appropriate accounting for complex financing transactions."   However, SoundHound has consistently represented that it is "in the process of designing and implementing controls and taking other actions to remediate" the foregoing material weaknesses.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

4.    In January 2024, SoundHound acquired all of the issued and outstanding equity of SYNQ3, a provider of voice AI and other technology solutions to the restaurant industry, for total purchase consideration of $15.8 million (the "SYNQ3 Acquisition").  Then, in August 2024, the Company acquired Amelia Holdings, Inc. ("Amelia"), a privately-held conversational AI software company involved in the development and delivery of AI and automation solutions and related services, for a "[p]urchase price of $80M in cash and equity, with partial payment and assumption of Amelia's debt, as well as future earnout potential aligned to revenue milestone achievements" (the "Amelia Acquisition").  SoundHound has stated that these "strategic acquisitions" contributed to the Company's "breakthrough year" in 2024, "expanding [its] leadership position in voice and conversational AI."

5.    Throughout the Class Period, Defendants made materially false and misleading statements regarding the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the material weaknesses in SoundHound's internal controls over financial reporting impaired the Company's ability to effectively account for corporate acquisitions; (ii) in addition, the Company overstated the extent to which it had remediated, and/or its ability to remediate, the material weaknesses in its internal controls over financial reporting; (iii) as a result of the foregoing material weaknesses, SoundHound's reported goodwill following the Amelia Acquisition was inflated and would need to be corrected; (iv) further, SoundHound would likely require extra time and expense to effectively account for the SYNQ3 and Amelia Acquisitions; (v) the foregoing increased the risk that the Company would be unable to timely file certain financial reports with the SEC; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

6.      On March 4, 2025, SoundHound disclosed in a filing with the SEC that it would be unable to timely file its Annual Report for 2024 (the "2024 10-K").  SoundHound stated that "[d]ue to the complexity of accounting for [the SYNQ3 and Amelia Acquisitions], the Company require[d] additional time to prepare financial statements and accompanying notes" and that it "ha[d] identified material weaknesses in its internal control over financial reporting."

7.      On this news, SoundHound's stock price fell $0.61 per share, or 5.86%, to close at $9.72 per share on March 4, 2025.

8.      Then, on March 11, 2025, SoundHound filed its 2024 10-K.  In the 2024 10-K, SoundHound stated, in relevant part, that, as of December 31, 2024, "[t]he Company did not design and maintain effective controls related to the identification of and accounting for certain non-routine, unusual or complex transactions, including the accounting for complex financing transactions **and acquisitions**"—disclosing for the first time that the Company's lack of effective controls was impairing its ability to account for corporate acquisitions.[1]

9.      Further, in discussing the Amelia Acquisition, the 2024 10-K stated, in relevant part, that, during the year ended December 31, 2024, as a result of the foregoing material weaknesses related to the Company's ability to account for corporate acquisitions, SoundHound "recorded adjustments to **correct certain errors** in the preliminary purchase price allocation that existed as of [August 6, 2024 (the "Amelia Acquisition Date")]," which "**decreased the contingent earnout consideration by $5.3 million, decreased the accounts payable by $3.7 million, decreased the accrued liabilities by $1.2 million, increased deferred revenue by $0.3 million and increased the deferred tax liabilities by $0.7 million**" and "[a]s a result of the adjusted [Amelia Acquisition Date] fair value of contingent earnout consideration recognized,

---

[1] All emphases included herein are added unless otherwise indicated.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

assets acquired and liabilities assumed, ***we recorded a decrease of $9.3 million to the goodwill recognized***."

10.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## JURISDICTION AND VENUE

11.     The claims asserted herein arise under and pursuant to Sections 10(b) and 20(a) of the Exchange Act (15 U.S.C. §§ 78j(b) and 78t(a)) and Rule 10b-5 promulgated thereunder by the SEC (17 C.F.R. § 240.10b-5).

12.     This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. § 1331 and Section 27 of the Exchange Act.

13.     Venue is proper in this District pursuant to Section 27 of the Exchange Act (15 U.S.C. § 78aa) and 28 U.S.C. § 1391(b).  SoundHound is headquartered in this District, Defendants conduct business in this District, and a significant portion of Defendants' activities took place within this District.

14.     In connection with the acts alleged in this complaint, Defendants, directly or indirectly, used the means and instrumentalities of interstate commerce, including, but not limited to, the mails, interstate telephone communications, and the facilities of the national securities markets.

## PARTIES

15.     Plaintiff, as set forth in the attached Certification, acquired SoundHound securities at artificially inflated prices during the Class Period and was damaged upon the revelation of the alleged corrective disclosures.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

16.     Defendant SoundHound is a Delaware corporation with principal executive offices located at 5400 Betsy Ross Drive, Santa Clara, CA 95054.  SoundHound's common stock trades in an efficient market on the Nasdaq Global Market ("NASDAQ") under the ticker symbol "SOUN."

17.     Defendant Keyvan Mohajer ("Mohajer") has served as SoundHound's President, Chief Executive Officer, and Director at all relevant times.

18.     Defendant Nitesh Sharan ("Sharan") has served as SoundHound's Chief Financial Officer at all relevant times.

19.     Defendants Mohajer and Sharan are collectively referred to herein as the "Individual Defendants."

20.     The Individual Defendants possessed the power and authority to control the contents of SoundHound's SEC filings, press releases, and other market communications.  The Individual Defendants were provided with copies of SoundHound's SEC filings and press releases alleged herein to be misleading prior to or shortly after their issuance and had the ability and opportunity to prevent their issuance or to cause them to be corrected.  Because of their positions with SoundHound, and their access to material information available to them but not to the public, the Individual Defendants knew that the adverse facts specified herein had not been disclosed to and were being concealed from the public, and that the positive representations being made were then materially false and misleading.  The Individual Defendants are liable for the false statements and omissions pleaded herein.

21.     SoundHound and the Individual Defendants are collectively referred to herein as "Defendants."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## SUBSTANTIVE ALLEGATIONS

### Background

22.     SoundHound provides an independent voice AI platform that purportedly enables businesses across industries to deliver high-quality conversational experiences to their customers.

### Materially False and Misleading Statements Issued During the Class Period

23.     The Class Period begins on May 10, 2024, the day after SoundHound hosted an earnings call with investors and analysts—post-market on May 9, 2024—to discuss the Company's Q1 2024 results (the "Q1 2024 Earnings Call").  During the scripted portion of the Q1 2024 Earnings Call, Defendant Sharan stated, in relevant part, "[w]ith our recent acquisitions, SYNQ3, now fully in the mix, the benefits of integrating this pioneering restaurant tech organization with our years of voice AI innovations are clear.  And the breadth of coverage we now have in the restaurant sector is so exciting and showing up in overflowing customer activity."

24.     Also on May 10, 2024, SoundHound filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended March 31, 2024 (the "Q1 2024 10-Q").  In providing an overview of the Company's controls and procedures, the Q1 2024 10-Q acknowledged that SoundHound had previously identified material weaknesses in its internal control over financial reporting "related to the control environment as the Company lacked sufficient oversight of activities related to its internal control over financial reporting due to a lack of appropriate level of experience and training commensurate with its financial reporting requirements," but discussed its purported efforts to remediate the foregoing weaknesses, stating, in relevant part:

**Management's Plan to Remediate the Material Weaknesses**

The following remediation actions are currently being implemented and are in progress:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

- Engaged a third party to perform a risk assessment that includes the identification and walkthrough of key business processes and conducting design and operational control testing to address key risks.

- Completed a segregation of duties assessment identifying key conflicts and mitigating controls.

- Initiated the design and implementation of a Segregation of Duties automated tool for our Enterprise Resource Planning (ERP) system. Additionally, we have initiated the design and implementation of similar controls for the remaining financially relevant applications. Improvements have been implemented in tool utilization to strengthen the segregation of duties.

- Initiated the design and implementation of controls related to the review of Service Organization Control reports, which cover program change management and computer operations for many of the applications that we rely on for financial reporting.

- Developed policies and procedures for the quarterly user access review of all users with access to the financially relevant systems and then implemented the quarterly user access review for one design cycle.

- Initiated the design and implementation of the controls related to review and approval of complex financing transactions.

- Completed the implementation of an automated month and quarter-end accounting close workflow tool to facilitate the review and support of key financial close process controls.

- The Company plans to hire personnel with expertise in internal controls.

The foregoing statements regarding the Company's remediation efforts overstated the extent to which it had remediated, and/or its ability to remediate, the material weaknesses in its internal controls over financial reporting.

25.    Appended to the Q1 2024 10-Q as exhibits were signed certifications pursuant to the Sarbanes-Oxley Act of 2002 ("SOX") by the Individual Defendants, attesting that the "[i]nformation contained in the [Q1 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company as of the dates and for the periods expressed in the [Q1 2024 10-Q]."

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

26.     On August 8, 2024, the Company issued a press release entitled "SoundHound AI Acquires Amelia, Significantly Expanding Its Scale and Reach In Conversational AI Across New Verticals and Hundreds of Enterprise Brands."  The press release stated, in relevant part:

> SoundHound [. . .] today announced the acquisition of Amelia, a leading enterprise AI software company. The business combination positions SoundHound AI as the foremost provider of voice and conversational generative AI, with reach across multiple industries – including retail, financial services, healthcare, automotive, smart devices, restaurants, and more.
>
> The companies will bring together decades of experience in conversational AI – and highly complementary product portfolios – to offer best-in-class, scalable customer service support to a vast spectrum of businesses. These include some of the very largest multinational enterprise brands, top 15 global banks, and Fortune 500 organizations, with the combined company spanning nearly 200 marquee customers.
>
> For SoundHound AI, the deal marks a significant and strategic expansion of its existing customer service pillar, adding breadth and depth to a division that has seen substantial growth amid the accelerated adoption of voice and conversational generative AI solutions. The acquisition positions the company at the center of this burgeoning space, as enterprise spending on generative AI is forecast to gather more momentum, reaching between $175 billion and $250 billion by 2027 (McKinsey, June 2024). Customer service is identified as a key area for disruption.

27.     That same day, SoundHound issued a press release announcing the Company's Q2 2024 results.  The press release stated, in relevant part:

> "This has been a milestone quarter, with strong customer momentum across all of our key industries – including several new global brands," said [Defendant] Mohajer[.]  "And ***today we announced a significant acquisition that will expand SoundHound's reach across multiple new enterprise verticals.*** We believe the demand for voice and conversational AI is increasing and are committed to strengthening our leadership position in this growing market."
>
> ***
>
> We continued to realize strong growth in the second quarter while meaningfully improving our capital structure," said [Defendant] Sharan[.]  "This is allowing us to further accelerate our organic business ***while capitalizing on high-impact M&A. Today's acquisition of Amelia is a key step towards harnessing the huge growth potential in conversational AI and helps us scale even faster.***"

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

28.     Also on August 8, 2024, SoundHound hosted an earnings call with investors and analysts to discuss the Company's Q2 2024 results (the "Q2 2024 Earnings Call"). During the scripted portion of the Q2 2024 Earnings Call, Defendant Mohajer stated, in relevant part:

> Before getting into the quarter, I wanted to talk about the announcement we made this morning to acquire a conversational AI leader, Amelia. This transaction is a natural extension of our strategy, and we saw a great opportunity to partner with a company that we believe will accelerate our mission of voice-enabling the world with conversational intelligence. Our vision has always been to create a conversational AI platform that exceeds human capabilities, delivers value and delights end users, creates an ecosystem with billions of products, and enables innovation and monetization opportunities for product creators. Today's announcement is a continuation of that path and now is the time for such a bold move.

29.     Also during the scripted portion of the Q2 2024 Earnings Call, Defendant Sharan stated, in relevant part:

> Today, we announced and [Defendant Mohajer] noted earlier, our acquisition of conversational AI leader Amelia. Let me spend a minute explaining how we think about M&A.
>
> First, we believe having a programmatic M&A approach can be value-generating. Our acquisition philosophy stems from our overall strategy and vision, which is to voice-enable the world with conversational intelligence and transform the next wave of how humans will interact with technology, increasingly with voice and natural conversations.
>
> ***
>
> The primary filters we have been using to select appropriate acquisition targets have been, one, does it fit within our long-term strategy? Two, will it amplify or accelerate our pathway to realize that strategy? Three, can we effectively operationalize it and drive meaningful synergies? And four, can we buy it at the right price, appreciating the risks that inherently come from such transactions? Amelia checked those boxes for us. While it would be a meaningful acquisition with a lot of complementarity, we don't take the integration effort lightly and know it will take some time to get it right, but the prize together was too attractive to bypass in our opinion, especially with the enterprise traction and demands we have been seeing in the marketplace. We just announced this today, so it's still quite early and we know there will be questions, so please note that we plan to share more and dive much deeper on the opportunity we see.

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

30.     On August 9, 2024, SoundHound filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended June 30, 2024 (the "Q2 2024 10-Q").  The Q2 2024 10-Q contained a substantively similar description of the previously identified material weaknesses in SoundHound's internal control over financial reporting and the Company's purported remediation efforts as discussed, *supra*, in ¶ 24.

31.     Appended to the Q2 2024 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that the "[i]nformation contained in the [Q2 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company as of the dates and for the periods expressed in the [Q2 2024 10-Q]."

32.     On November 12, 2024, SoundHound hosted an earnings call with investors and analysts to discuss the Company's Q3 2024 results (the "Q3 2024 Earnings Call").  During the scripted portion of the Q3 2024 Earnings Call, Defendant Mohajer stated, in relevant part:

> Moving on to our AI agent customer service portfolio. I'm very pleased with the way we have grown this business over the course of this year, winning new logos organically, expanding with existing customers, growing our ecosystem of partners and ***making smart acquisitions***. We have now expanded our enterprise customer brands deep into some major industries like financial services and healthcare among others. And we see opportunities in our pipeline for new verticals such as energy and going deeper into retail.

33.     Also on November 12, 2024, SoundHound filed a Quarterly Report on Form 10-Q with the SEC, reporting the Company's financial and operational results for the quarter ended September 30, 2024 (the "Q3 2024 10-Q").  The Q3 2024 10-Q contained a substantively similar description of the previously identified material weaknesses in SoundHound's internal control over financial reporting and the Company's purported remediation efforts as discussed, *supra*, in ¶ 24.  Further, in providing an overview of the Company's consolidated balance sheets, the Q3 2024 10-Q reported that SoundHound's goodwill as of September 30, 2024—*i.e.*, directly following the Amelia Acquisition—was approximately ***$111.7M***.

34.     Appended to the Q3 2024 10-Q as exhibits were signed certifications pursuant to SOX by the Individual Defendants, attesting that the "[i]nformation contained in the [Q3 2024 10-Q] fairly presents, in all material respects, the financial condition and results of operations of the Company as of the dates and for the periods expressed in the [Q3 2024 10-Q]."

35.     The statements referenced in ¶¶ 23-34 were materially false and misleading because Defendants made false and/or misleading statements, as well as failed to disclose material adverse facts about the Company's business, operations, and prospects.  Specifically, Defendants made false and/or misleading statements and/or failed to disclose that: (i) the material weaknesses in SoundHound's internal controls over financial reporting impaired the Company's ability to effectively account for corporate acquisitions; (ii) in addition, the Company overstated the extent to which it had remediated, and/or its ability to remediate, the material weaknesses in its internal controls over financial reporting; (iii) as a result of the foregoing material weaknesses, SoundHound's reported goodwill following the Amelia Acquisition was inflated and would need to be corrected; (iv) further, SoundHound would likely require extra time and expense to effectively account for the SYNQ3 and Amelia Acquisitions; (v) the foregoing increased the risk that the Company would be unable to timely file certain financial reports with the SEC; and (vi) as a result, the Company's public statements were materially false and misleading at all relevant times.

**The Truth Emerges**

36.     On March 4, 2025, SoundHound disclosed in a filing with the SEC that it would be unable to timely file the 2024 10-K.  Specially, SoundHound stated, in relevant part:

> As previously disclosed, on January 3, 2024, SoundHound AI, Inc. (the "Company") completed the acquisition of Synq3, Inc. in a cash and stock transaction (the "SYNQ3 Acquisition"), and on August 7, 2024, the Company completed the acquisition of Amelia Holdings, Inc. in a cash and stock transaction (together with the SYNQ3 Acquisition, the "Acquisitions").  ***Due to the complexity of accounting for the Acquisitions, the Company requires additional time to***

*prepare the financial statements and the accompanying notes disclosed in the Company's Annual Report on Form 10-K for the fiscal year ended December 31, 2024 (the "Form 10-K"). Accordingly, the Company has determined that it is unable to file the Form 10-K without unreasonable effort or expense. As previously disclosed, the Company has identified material weaknesses in its internal control over financial reporting. These material weaknesses continue to exist as of December 31, 2024*. The Company expects to file its Form 10-K within the fifteen-day period provided under Rule 12b-25, no later than by March 18, 2025.

37.    On this news, SoundHound's stock price fell $0.61 per share, or 5.86%, to close at $9.72 per share on March 4, 2025.

38.    Then, on March 11, 2025, SoundHound filed its 2024 10-K.  In the 2024 10-K, SoundHound disclosed for the first time that the Company's lack of effective controls was impairing its ability to account for corporate acquisitions, stating, in relevant part:

Our management is responsible for establishing and maintaining adequate internal control over financial reporting (as defined in Rules 13a-15(f) and 15d-15(f) under the Securities Exchange Act of 1934, as amended). Our management assessed the effectiveness of our internal control over financial reporting as of December 31, 2024. In making this assessment, our management used the criteria established in Internal Control - Integrated Framework (2013) issued by the Committee of Sponsoring Organizations of the Treadway Commission. A material weakness is a deficiency, or combination of deficiencies, in internal control over financial reporting such that there is a reasonable possibility that a material misstatement of a company's annual or interim financial statements may not be prevented or detected on a timely basis. The Company did not maintain an effective control environment as it lacked sufficient oversight of activities related to its internal control over financial reporting due to a lack of appropriate level of experience and training commensurate with its financial reporting requirements. ***Further, due to rapid business growth, changes to existing controls or the implementation of new controls have not been sufficient to respond to changes to the risks of material misstatement to financial reporting, which resulted in the Company, including the SYNQ3 and Amelia entities which were acquired during 2024, not designing and maintaining effective controls related to substantially all accounts and disclosures. These material weaknesses contributed to the following additional material weaknesses as of December 31, 2024:***

- ***The Company did not design and maintain effective controls related to the identification of and accounting for certain non-routine, unusual or complex transactions, including the accounting for complex financing transactions and acquisitions***.

39.     Further, in discussing the Amelia Acquisition, the 2024 10-K stated, in relevant part, that, as a result of the foregoing material weaknesses related to the Company's ability to account for corporate acquisitions:

> During the year ended December 31, 2024, we recorded measurement period adjustments to increase the cash consideration by $12.8 thousand, to decrease the accounts receivable by $0.2 million, increase the accrued liabilities by $0.9 million due to additional payroll taxes identified, to decrease the non-current income tax liabilities by $1.8 million due to the change of pre-acquisition tax exposures subsequent to the acquisition. As a result of the adjusted acquisition-date fair value of cash consideration, assets acquired and liabilities assumed, we recorded a decrease of $0.7 million to the goodwill recognized. The measurement period adjustments were recorded in the consolidated financial statements as of and for the year ended December 31, 2024 and were made to reflect facts and circumstances that existed as of the Amelia Acquisition Date. ***In addition to the measurement period adjustments, we also recorded adjustments to correct certain errors in the preliminary purchase price allocation that existed as of the [Amelia Acquisition Date] during the year ended December 31, 2024, which decreased the contingent earnout consideration by $5.3 million, decreased the accounts payable by $3.7 million, decreased the accrued liabilities by $1.2 million, increased deferred revenue by $0.3 million and increased the deferred tax liabilities by $0.7 million. As a result of the adjusted acquisition-date fair value of contingent earnout consideration recognized, assets acquired and liabilities assumed, we recorded a decrease of $9.3 million to the goodwill recognized***. The identified error related to the contingent earnout consideration had an immaterial impact to the change in fair value from the acquisition date through September 30, 2024, which would have been recorded in change in fair value of contingent acquisition liabilities in the consolidated statements of operations and comprehensive loss.

40.     As a result of Defendants' wrongful acts and omissions, and the precipitous decline in the market value of the Company's securities, Plaintiff and other Class members have suffered significant losses and damages.

## SCIENTER ALLEGATIONS

41.     During the Class Period, Defendants had actual knowledge of the misleading nature of the statements they made, or acted in reckless disregard of the true information known to them at the time. In so doing, Defendants participated in a scheme to defraud and committed acts, practices, and participated in a course of business that operated as a fraud or deceit on purchasers of the Company's securities during the Class Period.

1

## **PLAINTIFF'S CLASS ACTION ALLEGATIONS**

42.     Plaintiff brings this action as a class action pursuant to Federal Rule of Civil Procedure 23(a) and (b)(3) on behalf of a Class, consisting of all those who purchased or otherwise acquired SoundHound securities during the Class Period (the "Class"); and were damaged upon the revelation of the alleged corrective disclosures.  Excluded from the Class are Defendants herein, the officers and directors of the Company, at all relevant times, members of their immediate families and their legal representatives, heirs, successors or assigns and any entity in which Defendants have or had a controlling interest.

43.     The members of the Class are so numerous that joinder of all members is impracticable.  Throughout the Class Period, SoundHound securities were actively traded on the NASDAQ.  While the exact number of Class members is unknown to Plaintiff at this time and can be ascertained only through appropriate discovery, Plaintiff believes that there are hundreds or thousands of members in the proposed Class.  Record owners and other members of the Class may be identified from records maintained by SoundHound or its transfer agent and may be notified of the pendency of this action by mail, using the form of notice similar to that customarily used in securities class actions.

44.     Plaintiff's claims are typical of the claims of the members of the Class as all members of the Class are similarly affected by Defendants' wrongful conduct in violation of federal law that is complained of herein.

45.     Plaintiff will fairly and adequately protect the interests of the members of the Class and has retained counsel competent and experienced in class and securities litigation.  Plaintiff has no interests antagonistic to or in conflict with those of the Class.

46.    Common questions of law and fact exist as to all members of the Class and predominate over any questions solely affecting individual members of the Class.  Among the questions of law and fact common to the Class are:

- whether the federal securities laws were violated by Defendants' acts as alleged herein;

- whether statements made by Defendants to the investing public during the Class Period misrepresented material facts about the business, operations and management of SoundHound;

- whether the Individual Defendants caused SoundHound to issue false and misleading financial statements during the Class Period;

- whether Defendants acted knowingly or recklessly in issuing false and misleading financial statements;

- whether the prices of SoundHound securities during the Class Period were artificially inflated because of the Defendants' conduct complained of herein; and

- whether the members of the Class have sustained damages and, if so, what is the proper measure of damages.

47.    A class action is superior to all other available methods for the fair and efficient adjudication of this controversy since joinder of all members is impracticable.  Furthermore, as the damages suffered by individual Class members may be relatively small, the expense and burden of individual litigation make it impossible for members of the Class to individually redress the wrongs done to them.  There will be no difficulty in the management of this action as a class action.

48.    Plaintiff will rely, in part, upon the presumption of reliance established by the fraud-on-the-market doctrine in that:

- Defendants made public misrepresentations or failed to disclose material facts during the Class Period;

- the omissions and misrepresentations were material;

- SoundHound securities are traded in an efficient market;

- the Company's shares were liquid and traded with moderate to heavy volume during the Class Period;

- the Company traded on the NASDAQ and was covered by multiple analysts;

- the misrepresentations and omissions alleged would tend to induce a reasonable investor to misjudge the value of the Company's securities; and

- Plaintiff and members of the Class purchased, acquired and/or sold SoundHound securities between the time the Defendants failed to disclose or misrepresented material facts and the time the true facts were disclosed, without knowledge of the omitted or misrepresented facts.

49.     Based upon the foregoing, Plaintiff and the members of the Class are entitled to a presumption of reliance upon the integrity of the market.

50.     Alternatively, Plaintiff and the members of the Class are entitled to the presumption of reliance established by the Supreme Court in *Affiliated Ute Citizens of the State of Utah v. United States*, 406 U.S. 128, 92 S. Ct. 2430 (1972), as Defendants omitted material information in their Class Period statements in violation of a duty to disclose such information, as detailed above.

## COUNT I

### (Violations of Section 10(b) of the Exchange Act and Rule 10b-5 Promulgated Thereunder Against All Defendants)

51.     Plaintiff repeats and re-alleges each and every allegation contained above as if fully set forth herein.

52.     This Count is asserted against Defendants and is based upon Section 10(b) of the Exchange Act, 15 U.S.C. § 78j(b), and Rule 10b-5 promulgated thereunder by the SEC.

53.     During the Class Period, Defendants engaged in a plan, scheme, conspiracy and course of conduct, pursuant to which they knowingly or recklessly engaged in acts, transactions, practices and courses of business which operated as a fraud and deceit upon Plaintiff and the other

members of the Class; made various untrue statements of material facts and omitted to state material facts necessary in order to make the statements made, in light of the circumstances under which they were made, not misleading; and employed devices, schemes and artifices to defraud in connection with the purchase and sale of securities. Such scheme was intended to, and, throughout the Class Period, did: (i) deceive the investing public, including Plaintiff and other Class members, as alleged herein; (ii) artificially inflate and maintain the market price of SoundHound securities; and (iii) cause Plaintiff and other members of the Class to purchase or otherwise acquire SoundHound securities and options at artificially inflated prices. In furtherance of this unlawful scheme, plan and course of conduct, Defendants, and each of them, took the actions set forth herein.

54.     Pursuant to the above plan, scheme, conspiracy and course of conduct, each of the Defendants participated directly or indirectly in the preparation and/or issuance of the quarterly and annual reports, SEC filings, press releases and other statements and documents described above, including statements made to securities analysts and the media that were designed to influence the market for SoundHound securities. Such reports, filings, releases and statements were materially false and misleading in that they failed to disclose material adverse information and misrepresented the truth about SoundHound's finances and business prospects.

55.     By virtue of their positions at SoundHound, Defendants had actual knowledge of the materially false and misleading statements and material omissions alleged herein and intended thereby to deceive Plaintiff and the other members of the Class, or, in the alternative, Defendants acted with reckless disregard for the truth in that they failed or refused to ascertain and disclose such facts as would reveal the materially false and misleading nature of the statements made, although such facts were readily available to Defendants. Said acts and omissions of Defendants were committed willfully or with reckless disregard for the truth. In addition, each Defendant

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

knew or recklessly disregarded that material facts were being misrepresented or omitted as described above.

56.     Information showing that Defendants acted knowingly or with reckless disregard for the truth is peculiarly within Defendants' knowledge and control. As the senior managers and/or directors of SoundHound, the Individual Defendants had knowledge of the details of SoundHound's internal affairs.

57.     The Individual Defendants are liable both directly and indirectly for the wrongs complained of herein. Because of their positions of control and authority, the Individual Defendants were able to and did, directly or indirectly, control the content of the statements of SoundHound. As officers and/or directors of a publicly-held company, the Individual Defendants had a duty to disseminate timely, accurate, and truthful information with respect to SoundHound's businesses, operations, future financial condition and future prospects. As a result of the dissemination of the aforementioned false and misleading reports, releases and public statements, the market price of SoundHound securities was artificially inflated throughout the Class Period. In ignorance of the adverse facts concerning SoundHound's business and financial condition which were concealed by Defendants, Plaintiff and the other members of the Class purchased or otherwise acquired SoundHound securities at artificially inflated prices and relied upon the price of the securities, the integrity of the market for the securities and/or upon statements disseminated by Defendants, and were damaged thereby.

58.     During the Class Period, SoundHound securities were traded on an active and efficient market. Plaintiff and the other members of the Class, relying on the materially false and misleading statements described herein, which the Defendants made, issued or caused to be disseminated, or relying upon the integrity of the market, purchased or otherwise acquired shares of SoundHound securities at prices artificially inflated by Defendants' wrongful conduct. Had

Plaintiff and the other members of the Class known the truth, they would not have purchased or otherwise acquired said securities, or would not have purchased or otherwise acquired them at the inflated prices that were paid.  At the time of the purchases and/or acquisitions by Plaintiff and the Class, the true value of SoundHound securities was substantially lower than the prices paid by Plaintiff and the other members of the Class.  The market price of SoundHound securities declined sharply upon public disclosure of the facts alleged herein to the injury of Plaintiff and Class members.

59.    By reason of the conduct alleged herein, Defendants knowingly or recklessly, directly or indirectly, have violated Section 10(b) of the Exchange Act and Rule 10b-5 promulgated thereunder.

60.    As a direct and proximate result of Defendants' wrongful conduct, Plaintiff and the other members of the Class suffered damages in connection with their respective purchases, acquisitions and sales of the Company's securities during the Class Period, upon the disclosure that the Company had been disseminating misrepresented financial statements to the investing public.

## **<u>COUNT II</u>**

### **(Violations of Section 20(a) of the Exchange Act Against the Individual Defendants)**

61.    Plaintiff repeats and re-alleges each and every allegation contained in the foregoing paragraphs as if fully set forth herein.

62.    During the Class Period, the Individual Defendants participated in the operation and management of SoundHound, and conducted and participated, directly and indirectly, in the conduct of SoundHound's business affairs.  Because of their senior positions, they knew the adverse non-public information about SoundHound's misstatement of income and expenses and false financial statements.

63.    As officers and/or directors of a publicly owned company, the Individual Defendants had a duty to disseminate accurate and truthful information with respect to SoundHound's financial condition and results of operations, and to correct promptly any public statements issued by SoundHound which had become materially false or misleading.

64.    Because of their positions of control and authority as senior officers, the Individual Defendants were able to, and did, control the contents of the various reports, press releases and public filings which SoundHound disseminated in the marketplace during the Class Period concerning SoundHound's results of operations.  Throughout the Class Period, the Individual Defendants exercised their power and authority to cause SoundHound to engage in the wrongful acts complained of herein. The Individual Defendants, therefore, were "controlling persons" of SoundHound within the meaning of Section 20(a) of the Exchange Act.  In this capacity, they participated in the unlawful conduct alleged which artificially inflated the market price of SoundHound securities.

65.    Each of the Individual Defendants, therefore, acted as a controlling person of SoundHound.  By reason of their senior management positions and/or being directors of SoundHound, each of the Individual Defendants had the power to direct the actions of, and exercised the same to cause, SoundHound to engage in the unlawful acts and conduct complained of herein.  Each of the Individual Defendants exercised control over the general operations of SoundHound and possessed the power to control the specific activities which comprise the primary violations about which Plaintiff and the other members of the Class complain.

66.    By reason of the above conduct, the Individual Defendants are liable pursuant to Section 20(a) of the Exchange Act for the violations committed by SoundHound.

### **PRAYER FOR RELIEF**

**WHEREFORE**, Plaintiff demands judgment against Defendants as follows:

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

A.     Determining that the instant action may be maintained as a class action under Rule 23 of the Federal Rules of Civil Procedure, and certifying Plaintiff as the Class representative;

B.     Requiring Defendants to pay damages sustained by Plaintiff and the Class by reason of the acts and transactions alleged herein;

C.     Awarding Plaintiff and the other members of the Class prejudgment and post-judgment interest, as well as their reasonable attorneys' fees, expert fees and other costs; and

D.     Awarding such other and further relief as this Court may deem just and proper.

### DEMAND FOR TRIAL BY JURY

Plaintiff hereby demands a trial by jury.

Dated: March 28, 2025

Respectfully submitted,

POMERANTZ LLP

*/s/ Jennifer Pafiti*

Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman
(*pro hac vice* application forthcoming)
J. Alexander Hood II
(*pro hac vice* application forthcoming)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

THE SCHALL FIRM
Brian Schall
2049 Century Park East, Ste. 2460
Los Angeles, CA 90067
Telephone: 310-301-3335
brian@schallfirm.com

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS

1

*Attorneys for Plaintiff*

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

CLASS ACTION COMPLAINT FOR VIOLATIONS OF THE FEDERAL SECURITIES LAWS