POMERANTZ LLP
Jennifer Pafiti (SBN 282790)
1100 Glendon Avenue, 15th Floor
Los Angeles, California 90024
Telephone: (310) 405-7190
jpafiti@pomlaw.com

*Counsel for Co-Lead Plaintiff Movants*
*St. John Family Trust U/A DTD*
*08/19/1991 and Payal Dave and*
*Proposed Lead Counsel for the Class*

*[Additional Counsel on Signature Page]*

UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF CALIFORNIA
SAN FRANCISCO DIVISION

| | |
|---|---|
| TREVAR LILES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUNDHOUND AI, INC., KEYVAN MOHAJER, and NITESH SHARAN,<br><br>Defendants. | Case No.: 3:25-cv-02915-RFL<br><br>MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ST. JOHN FAMILY TRUST U/A DTD 08/19/1991 AND PAYAL DAVE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS<br><br><u>CLASS ACTION</u><br><br>Date:  July 1, 2025<br>Time:  10:00 a.m.<br>Judge:  Hon. Rita F. Lin<br>Courtroom:  15 – 18th Floor |

## **TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ...........................................................................................1

II.     ARGUMENT .....................................................................................................................5

      A.      THE TRUST AND DAVE SHOULD BE APPOINTED CO-LEAD
            PLAINTIFFS ...........................................................................................................5

           1.      The Trust and Dave Have the "Largest Financial Interest".......................6

           2.      The Trust and Dave Otherwise Satisfy the Requirements of Rule 23 .......7

           3.      The Trust and Dave are an Appropriate Movant Group ...........................7

III.    THE COMPETING MOTIONS SHOULD BE DENIED ..................................................8

      A.      None of the Eligible Competing Movants Has the Largest Financial Interest in
            this Litigation ..........................................................................................................8

      B.      Wisner and Hackett and Ramiz's Unorthodox Trading Make Them Atypical and
            Inadequate Class Representatives ..........................................................................8

      C.      Wisner and Hackett and Ramiz's Unorthodox Trading Subject Them to
            Disqualifying Unique Defenses ...........................................................................12

      D.      Wisner's Past Conduct Raises Questions As To His Readiness to Serve as a
            Fiduciary ...............................................................................................................14

IV.     CONCLUSION................................................................................................................15

**TABLE OF AUTHORITIES**

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
C10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)....................................... 4, 11

*Basic, Inc. v. Levinson*,
485 U.S. 224 (1988)................................................................................................. 5, 13, 14

*Bensley v. FalconStor Software, Inc.*,
277 F.R.D. 231 (E.D.N.Y. 2011) ........................................................................................ 14

*Bruce v. Suntech Power Holdings Co.*,
No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012)................................ 3, 8

*Eichenholtz v. Verifone Holdings, Inc.*,
No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)............................. 4, 11

*Farhar v. Ontrak, Inc.*,
No. 2:21-cv-01987-FLA (Ex), 2021 WL 2980589 (C.D. Cal. July 13, 2021) ...................... 11

*Howard v. Liquidity Servs.*,
322 F.R.D. 103 (D.D.C. 2017)............................................................................................. 13

*Hurst v. Enphase Energy*,
No. 20-cv-04036-BLF, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) .................. 4, 9, 11, 14

*In re Bally Total Fitness Sec. Litig.*,
Nos. 04 C 3530 *et al.*, 2005 WL 627960 (N.D. Ill. Mar. 15, 2005)..................................... 12

*In re Cavanaugh*,
306 F.3d 726 (9th Cir. 2002) ............................................................................................ 6, 7

*In re Netflix, Inc., Sec. Litig.*,
Nos. 12-0225 SC *et al.*, 2012 WL 1496171 (N.D. Cal. Apr. 26, 2012) ............................... 12

*In re Network Assocs. Secs. Litig.*,
76 F. Supp. 2d 1017 (N.D. Cal. 1999) ................................................................................. 14

*In re Snap Inc. Sec. Litig.*,
2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019)........................ 9, 10

*In re Surebeam Corp. Secs. Litig.*,
NO. 03-CV-1721 JM (POR), 2004 WL 5159061 (S.D. Cal. Dec. 31, 2003) ....................... 14

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ST. JOHN FAMILY TRUST U/A DTD 08/19/1991 AND PAYAL DAVE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:25-cv-02915-RFL

*Jaszczyszyn v. Sunpower Corp.*,
   No. 22-cv-00956-HSG, 2022 WL 10208559 (N.D. Cal. Oct. 13, 2022) ....................... 3, 9, 14

*Newman v. Eagle Bldg. Techs.*,
   209 F.R.D. 499 (S.D. Fla. 2002) ................................................................................... 15

*Nicolow v. Hewlett Packard Co.*,
   Nos. 12-05980 CRB *et al.*, 2013 WL 792642 (N.D. Cal. Mar. 4, 2013) ............................ 2, 6

*Perrin v. Sw. Water Co.*,
   No. 208CV7844FMCAGRX, 2009 WL 10654690 (C.D. Cal. Feb. 13, 2009) ....................... 7

*Porzio v. Overseas Shipholding Grp.*,
   No. 12 CIV. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ............................................ 10

*Richardson v. TVIA, Inc.*,
   No. C 06 06304 RMW, 2007 WL 1129344 (N.D. Cal. Apr. 16, 2007) .............................. 2, 7

*Robb v. Fitbit Inc.*,
   No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) ............................ 3, 7, 8

*Schleicher v. Wendt*,
   1:02-cv-1332-DFH-TAB, 2009 WL 761157 (S.D. Ind. Mar. 20, 2009) ............................... 15

*Sneed v. AcelRx Pharms., Inc.*,
   No. 21-cv-04353-BLF, 2021 WL 5964596 (C.D. Cal. Dec. 16, 2021) ............................ 5, 14

*Vataj v. Johnson*,
   19-CV-06996-HSG, 2020 WL 532981 (N.D. Cal. Feb. 3, 2020) ....................................... 2, 7

*Villare v. Abiomed, Inc.*,
   19 Civ. 7319 (ER) *et al.*, 2020 WL 3497285 (S.D.N.Y. June 29, 2020) .............................. 15

**Statutes**

15 U.S.C. § 78u-4 ............................................................................................. 1, 4, 6, 12

Private Securities Litigation Reform Act of 1995 ................................................................*passim*

**Rules**

Fed. R. Civ. P. 23 ...............................................................................................*passim*

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ST. JOHN FAMILY TRUST U/A DTD 08/19/1991 AND PAYAL DAVE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:25-cv-02915-RFL

Movants the Trust and Dave[1] respectfully submit this memorandum of law in further support of their motion for appointment as Co-Lead Plaintiffs and approval of their selection of Pomerantz as Lead Counsel (Dkt. No. 18); and in opposition to the competing motions of (i) Tamar Wisner ("Wisner") and William Hackett ("Hackett" and, together with Wisner, "Wisner and Hackett") (Dkt. No. 21); (ii) Samih Ramiz ("Ramiz") (Dkt. No. 10); and (iii) Joseph Kandel ("Kandel") (Dkt. No. 24).[2]

## I.    PRELIMINARY STATEMENT

The Action is a putative securities class action lawsuit on behalf of investors in SoundHound securities.  As with all federal class action securities lawsuits, a lead plaintiff must be appointed.  The PSLRA governs that process and, pursuant to the PSLRA, the Court must appoint as Lead Plaintiff the movant with the greatest financial interest in the outcome of the action; and who satisfies the requirements of Rule 23 of the Federal Rules of Civil Procedure.  15 U.S.C. § 78u-4(a)(3)(B)(iii)(I).  Here, the only movants to satisfy the PSLRA's appointment criteria are the Trust and Dave.  First, the Trust and Dave possess the largest financial interest among the eligible candidates for appointment as Lead Plaintiff because they incurred a loss of approximately $398,104 in connection with their Class Period purchases of SoundHound securities, more than any eligible competing movant.

The table below sets forth the Trust and Dave's losses compared to those of the competing movants:

| Movant | Loss |
|---|---|
| The Trust and Dave | $398,104 |
| Kandel | $34,109.49 |
| ~~Wisner and Hackett~~ | ~~$544,721.36~~ |
| ~~Ramiz~~ | ~~$319,561.32~~ |

[1] All capitalized terms herein are defined in the Trust and Dave's moving brief, unless otherwise indicated. *See* Dkt. No. 18.

[2] Initially, two other putative class members filed similar competing motions: (i) Robert Eugene Sternquist III, individually and as trustee of the Robert E. Sternquist III Trust u/a/d September 19, 2018 (the "Sternquist Trust") (Dkt. No. 9) and Frank Lint ("Lint") (Dkt. No. 28).  On June 9, 2025, the Sternquist Trust filed a notice withdrawing its motion.  Dkt. No. 33.  On June 10, 2025, Lint filed a statement of non-opposition to competing motions.  Dkt. No. 34.

1

Having incurred a loss of $398,104, the Trust and Dave have the greatest financial interest within the meaning of the PSLRA of any putative Class member eligible for appointment as Lead Plaintiff. *See Nicolow v. Hewlett Packard Co.*, Nos. 12-05980 CRB *et al.*, 2013 WL 792642, at *4 (N.D. Cal. Mar. 4, 2013) (emphasizing monetary loss in assessing financial interest). One competing movant duo, Wisner and Hackett, claim to have incurred a larger loss than the Trust and Dave. However, as discussed below, Wisner and Hackett are subject to unique defenses and fail to satisfy the adequacy and typicality requirements of Rule 23 and are therefore disqualified from consideration as Lead Plaintiff.[3]

In addition to their significant financial interest, the Trust and Dave also satisfy the adequacy and typicality requirements of Rule 23. The Trust and Dave are aware of no conflict between their interests and those of the Class, their losses incurred as a result of the Defendants' alleged malfeasance gives them a sufficient stake in the outcome of the Action to ensure vigorous advocacy, and in Pomerantz, the Trust and Dave have retained qualified and experienced counsel. *Richardson v. TVIA, Inc.*, No. C 06 06304 RMW, 2007 WL 1129344, at *4 (N.D. Cal. Apr. 16, 2007). Moreover, the Trust and Dave's claims in this litigation are based on the same legal theory and arise from the same events and course of conduct as the claims of the other Class members. *See*, *e.g.*, *Vataj v. Johnson*, 19-CV-06996-HSG, 2020 WL 532981, at *3 (N.D. Cal. Feb. 3, 2020).

The Trust and Dave are a cohesive movant duo who have further demonstrated their adequacy by the submission of a Joint Declaration contemporaneously with their motion, attesting to, *inter alia*, their shared understanding of the responsibilities of a Lead Plaintiff pursuant to the PSLRA and their preparedness to coordinate their efforts to prosecute this action diligently on behalf of the Class. *See* Dkt. No. 18-6. Courts in this Judicial District and in the Ninth Circuit routinely appoint similarly constituted groups to serve as Lead Plaintiffs in PSLRA actions. *See*,

---

[3] As the table on p.1 reflects, Ramiz does not claim to have incurred a larger loss than the Trust and Dave. However, even assuming, *arguendo*, that he had made such a claim, as will be discussed further below, Ramiz is subject to the same unique defenses as Wisner and Hackett, and similarly fails to satisfy the adequacy and typicality requirements of Rule 23. Accordingly, Ramiz is also disqualified from consideration as Lead Plaintiff.

*e.g.*, *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *4, *7 (N.D. Cal. May 10, 2016) (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus"); *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class").

By contrast, both (1) Wisner and Hackett and (2) Ramiz are atypical and inadequate within the meaning of Rule 23, as well as subject to unique defenses, because they, unlike most members of the putative Class in this Action, engaged in unorthodox trading strategies during the Class Period.

Specifically, Hackett and Ramiz are serial in-and-out traders, meaning that they both purchased *and* sold SoundHound securities repeatedly over short periods of time throughout the Class Period.  In addition, Ramiz also purchased and sold significant quantities of SoundHound stock repeatedly even during single trading sessions.  Ramiz's trading activity plainly marks him as a pattern high-frequency day trader—that is, an investor trading with the goal of capitalizing on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations. Courts generally decline to appoint in-and-out traders and day traders as lead plaintiffs in PSLRA actions, finding them to be inadequate and/or atypical class representatives, and/or subject to unique defenses, because their trading patterns mean that they will frequently have difficulty establishing loss causation.  *See, e.g.*, *Jaszczyszyn v. Sunpower Corp.*, No. 22-cv-00956-HSG, 2022 WL 10208559, at *3 (N.D. Cal. Oct. 13, 2022) (finding that in-and-out trader "[did] not meet the typicality or adequacy requirements of Rule 23, as he would, at minimum, be subject to unique defenses regarding loss causation and his reliance on Defendants' misrepresentations");

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ST. JOHN FAMILY TRUST U/A DTD 08/19/1991 AND PAYAL DAVE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:25-cv-02915-RFL

*Hurst v. Enphase Energy*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *7-8 (N.D. Cal. Nov. 30, 2020) (same); *Applestein v. Medivation, Inc.*, C10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (day traders "typically focus[] on technical price movements rather than price, and therefore are subject to a defense the they would have purchased the stock at issue regardless of the misstatement/omission") (internal quotations omitted); *Eichenholtz v. Verifone Holdings, Inc.*, No. C 07-06140 MHP, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (finding that a "day-trader would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility. Specifically, it may be subject to a unique defense regarding its reliance upon publicly available information.").

Here, as discussed further below in Section III.B *infra*, Hackett was wholly in and out of his position in SoundHound stock—that is, he purchased SoundHound shares and shortly thereafter sold ***all*** of those shares—a total of ***nine*** times during the Class Period, and Ramiz was wholly in and out of his position in SoundHound stock a total of ***eleven*** times during the Class Period. These highly unusual trading patterns may raise questions as to the recoverability of Wisner and Hackett and Ramiz's investment losses at a later stage of this litigation. Moreover, Ramiz both purchased and sold SoundHound stock on ***29*** of the ***36*** days on which he traded shares, a pattern that plainly makes him a day trader.

The foregoing issues related to Wisner and Hackett and Ramiz's trading are disqualifying because they give to rise to unique defenses that would threaten to become the focus of this litigation if the Court were to appoint either Wisner and Hackett or Ramiz as Lead Plaintiff. The PSLRA prohibits the appointment of a lead plaintiff who is ""subject to unique defenses that render [him] incapable of representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). Here, if either Wisner and Hackett or Ramiz were appointed Lead Plaintiff, the Defendants are almost certain to capitalize on their unorthodox trading patterns—which, again, include in-and-out transactions and high-frequency day trading—in an effort to demonstrate that neither Wisner and

Hackett nor Ramiz purchased SoundHound securities in reliance on the integrity of the market, in an effort to deprive them of the presumption of reliance established in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988), that "[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." *Basic*, 485 U.S. at 247. In the best-case scenario, both Wisner and Hackett and Ramiz would be forced to devote considerable time and energy to litigating issues specific to their own trading history only, at the expense of the Class's claims. There is no reason to saddle the Class with such a representative.

Finally, unrelated to his financial interest or trading of Wisner and Hackett, Wisner's apparent prior misconduct raises legitimate questions implicating his fitness to serve as a fiduciary to the Class in this Action. *See*, *e.g.*, *Sneed v. AcelRx Pharms., Inc.*, No. 21-cv-04353-BLF, 2021 WL 5964596, at *4 (C.D. Cal. Dec. 16, 2021) (denying lead plaintiff motion, finding movant inadequate due to a 26-year-old criminal conviction, citing a "concern that his personal conduct will at least be a distraction from the case"). Specifically, a public records summary obtained from LexisNexis indicates that Wisner was, among other things: convicted for burglary of a vehicle in 2003; charged with forgery in 2003; convicted for robbery in 2004; and convicted for endangering a child in 2012. *See* Opposition Declaration of Jennifer Pafiti ("Pafiti Opp. Decl."), Ex. A. Wisner's background should plainly give the Court pause about entrusting him to pursue the Class's fraud claims in this litigation.

For the foregoing reasons, the Trust and Dave respectfully request that the Court grant their motion in its entirety and deny the competing motions.

## II.    ARGUMENT

### A.    THE TRUST AND DAVE SHOULD BE APPOINTED CO-LEAD PLAINTIFFS

The PSLRA creates a strong presumption that the Lead Plaintiff is the "person or group of persons" that "has the largest financial interest in the relief sought by the class" ***and*** "otherwise

5

satisfies the requirements of Rule 23." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(I). At this stage, the movant that has the largest financial interest need only make a *prima facie* showing that it satisfies the adequacy and typicality requirements of Rule 23. *In re Cavanaugh*, 306 F.3d 726, 730-31 (9th Cir. 2002). Once this presumption is triggered, it may be rebutted only upon proof that the presumptive Lead Plaintiff will not fairly represent the interests of the Class. 15 U.S.C. § 78u-4 (a)(3)(B)(iii)(II). Here, the most adequate class representatives for the Class are the Trust and Dave.

### 1.    The Trust and Dave Have the "Largest Financial Interest"

The PSLRA requires the court to adopt a rebuttable presumption that "the most adequate plaintiff . . . is the person or group of persons that . . . has the largest financial interest in the relief sought by the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii). While the PSLRA itself does not provide any guidance concerning the method of calculating which plaintiff has the "largest financial interest," courts in this Judicial District recognize that the amount of financial loss is the most significant factor to be considered. *See*, *e.g.*, *Nicolow*, 2013 WL 792642, at *4 (emphasizing loss in assessing financial interest). Under the foregoing analysis, no eligible movant seeking appointment as lead plaintiff in this action has a larger financial interest in the litigation than the Trust and Dave. As the chart at p. 1 illustrates, the Trust and Dave incurred a loss of $398,104 in connection with their Class Period purchases of SoundHound securities, nearly $364,000 larger than the loss incurred by Kandel, the only other eligible competing movant.

As discussed in detail *infra* at Section III.B, Wisner and Hackett, the only other movant group who claim to have incurred a larger loss on their Class Period purchases of SoundHound securities than the Trust and Dave, are atypical and inadequate within the meaning of Rule 23, as well as subject to unique defenses, and as such are disqualified from appointment as Lead Plaintiff.

**2.    The Trust and Dave Otherwise Satisfy the Requirements of Rule 23**

In addition to possessing the largest financial interest in the relief sought by the Class, the Trust and Dave have also made the requisite *prima facie* showing that they satisfy the typicality and adequacy requirements of Rule 23.  *See Cavanaugh*, 306 F.3d at 730-31.  First, the Trust and Dave's claims satisfy the typicality requirement of Rule 23(a)(3) because they are based on the same legal theory and arise from the same events and course of conduct as the Class's claims.  *See*, *e.g.*, *Vataj*, 2020 WL 532981, at *3.  The Trust and Dave, like all members of the Class, purchased SoundHound securities during the Class Period at prices artificially inflated by Defendants' misrepresentations or omissions and were damaged upon the disclosure of those misrepresentations and/or omissions.  These shared claims, which are based on the same legal theory, and arise from the same events and course of conduct as the Class's claims, satisfy the requirements of Rule 23.  *Vataj*, 2020 WL 532981, at *3.  Second, the Trust and Dave satisfy the adequacy requirement of Rule 23(a)(4) because they have a sufficient stake in the outcome of this litigation to ensure vigorous advocacy on behalf of the Class.  *See*, *e.g.*, *TVIA*, 2007 WL 1129344, at *4.

**3.    The Trust and Dave are an Appropriate Movant Group**

In addition, the Trust and Dave constitute an appropriate group of the type routinely appointed to serve as Co-Lead Plaintiffs, and, as such the Court should consider their combined financial interest in this litigation in determining the most adequate plaintiff for the Class.  *See, e.g.*, *Fitbit*, 2016 WL 2654351, at *7 (appointing five-person investor group as lead plaintiff); *Perrin v. Sw. Water Co.*, No. 208CV7844FMCAGRX, 2009 WL 10654690, at *3 (C.D. Cal. Feb. 13, 2009) ("[C]ourts have generally held that small and manageable groups serving as lead plaintiffs do not frustrate Congress' desire to ensure that investors, rather than lawyers, control securities litigation.").

Here, the Trust and Dave are a cohesive duo who incurred significant losses in connection with their purchases of SoundHound securities.  *See* Dkt. No. 18-3.  Contemporaneously with

7

their motion, the Trust and Dave submitted a Joint Declaration attesting to, *inter alia*, their backgrounds and investment experience; their understanding of the posture of this litigation; their understanding of the significance of their motion; their understanding of the responsibilities of a lead plaintiff appointed pursuant to the PSLRA; and their readiness to jointly undertake those responsibilities on behalf of the Class. *See generally* Dkt. No. 18-6. Courts routinely appoint Co-Lead Plaintiffs under such circumstances. *See, e.g.*, *Fitbit*, 2016 WL 2654351, at *4, *7 (appointing as lead plaintiff a group of five unrelated investors that submitted a joint declaration "stat[ing] that the individual members have discussed the responsibilities of acting as lead plaintiff, will stay in regular communication with counsel and with each other, and will make decisions by consensus"); *Suntech*, 2012 WL 5927985, at *3 (appointing as lead plaintiff a group of three unrelated investors that "submitted a joint declaration attesting that each is knowledgeable about the litigation, that they are working together, and that they are committed to protecting the interests of the Class").

## III.    THE COMPETING MOTIONS SHOULD BE DENIED

### A.    None of the Eligible Competing Movants Has the Largest Financial Interest in this Litigation

As discussed *supra* at Section II.A.1., the Trust and Dave have alleged the largest financial interest of any eligible lead plaintiff applicant. As such, it is self-evident that no other eligible movant can satisfy the PSLRA's first criterion for appointment as Lead Plaintiff. This fact alone mandates denial of Ramiz and Kandel's competing motions.

### B.    Wisner and Hackett and Ramiz's Unorthodox Trading Make Them Atypical and Inadequate Class Representatives

Separate and apart from their respective financial interests, Wisner and Hackett and Ramiz are disqualified from consideration because Hackett and Ramiz are serial "in-and-out" traders. Courts routinely decline to appoint in-and-out traders as lead plaintiffs in PSLRA actions, finding them to be inadequate and/or atypical class representatives, and/or subject to unique defenses, because their trading patterns mean that in-and-out traders will frequently have difficulty

establishing loss causation.  *See, e.g.*, *Sunpower*, 2022 WL 10208559, at *3 (finding that in-and-out trader "[did] not meet the typicality or adequacy requirements of Rule 23, as he would, at minimum, be subject to unique defenses regarding loss causation and his reliance on Defendants' misrepresentations"); *Enphase Energy*, 2020 WL 7025085, at *7-8 (same); *In re Snap Inc. Sec. Litig.*, 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *3 (C.D. Cal. Apr. 1, 2019) (noting "courts have held that such 'in-and-out' traders are inadequate or atypical because they are subject to the unique defense that they cannot prove loss causation" and finding it "sufficient to conclude that the issue is quite likely to be raised by Defendants to the detriment of the putative class").

Here, Hackett was in and out of his SoundHound stock position—that is, he purchased SoundHound stock and shortly thereafter sold all of those shares—a total of ***nine*** times, and Ramiz was in and out of his SoundHound stock position a total of ***eleven*** times, during the approximate 4-month period during which they traded SoundHound stock.  *See* Dkt. Nos. 21-2 at *5-7; 21-3 at *2-4; 10-3 at 3-95; 10-4.  The chart below illustrates the extent of Hackett[4] and Ramiz's in-and-out trading activity.

| Movant(s) | Opening Date ("In") | Exit Date ("Out") | Number of Days Held Before Exiting Position | Total Number of Shares Traded |
|---|---|---|---|---|
| Hackett Account 2 | 11/29/2024 | 12/4/2024 | 5 | 20,000 |
| | 12/5/2024 | 12/6/2024 | 1 | 26,900 |
| | 12/9/2024 | 12/13/2024 | 4 | 10,000 |
| | 12/16/2024 | 12/19/2024 | 3 | 10,000 |
| | 12/20/2024 | 12/20/2024 | 0 | 10,000 |
| | 12/23/2024 | 12/26/2024 | 3 | 10,000 |
| | 12/27/2024 | 12/27/2024 | 0 | 15,000 |
| | 12/30/2024 | 12/30/2024 | 0 | 10,000 |
| | 12/31/2024 | 1/3/2025 | 3 | 18,000 |
| | | | | |
| Ramiz | 11/6/2024 | 11/6/2024 | 0 | 20,000 |
| | 11/8/2024 | 11/8/2024 | 0 | 20,000 |
| | 11/11/2024 | 11/11/2024 | 0 | 20,000 |

---

[4] As reflected in Wisner and Hackett's motion papers, Hackett maintained two separate accounts in which he transacted in SoundHound securities.  *See* Dkt. No. 21-2 at *5-7.  Specifically, the schedule of transactions appended to Hackett's certification identifies William Hackett – Account 1 and William Hackett – Account 2 ("Hackett Account 2").  *Id.*

9

| | 11/12/2024 | 11/22/2024 | 10 | 37,009 |
|---|---|---|---|---|
| | 11/25/2024 | 11/29/2024 | 4 | 50,700 |
| | 12/2/2024 | 12/4/2024 | 2 | 130,000 |
| | 12/5/2024 | 12/5/2024 | 0 | 76,000 |
| | 12/6/2024 | 12/6/2024 | 0 | 129,761 |
| | 12/9/2024 | 12/9/2024 | 0 | 76,000 |
| | 12/10/2024 | 12/13/2024 | 3 | 238,855 |
| | 12/16/2024 | 12/16/2024 | 0 | 60,000 |

As the table demonstrates, Hackett's in-and-out transactions implicated purchases and sales of 129,900 shares of SoundHound stock, while Ramiz's in-and-out transactions implicated purchases and sales of 858,325 shares of SoundHound stock. Moreover, Hackett wholly exited his position *nine* times, and Ramiz wholly exited his position *eleven* times, in approximately *four* months—and in several instances, they did not even hold SoundHound shares for an entire day before selling all of their holdings. Indeed, each of the nine times Hackett exited his position in SoundHound securities, he did so within at most *five days* after entering that position and, each of the eleven times Ramiz completely exited his position in SoundHound securities, he did so within at most *ten days* after entering that position. *See* Dkt. Nos. 21-2 at *5-7; 21-3 at *2-4; 10-3 at 3-95; 10-4. Given the frequency with which Hackett and Ramiz exited their entire investment positions, there were many days of the Class Period on which neither Hackett nor Ramiz held any shares of SoundHound stock whatsoever. Accordingly, if or when an Amended Complaint filed in this litigation alleges different corrective disclosures, there is a non-speculative risk that neither Hackett nor Ramiz will have held SoundHound securities on the dates of any corrective disclosures, meaning that "there is a strong likelihood that [their] entire claimed losses will be unrecoverable[.]" *Porzio v. Overseas Shipholding Grp.,* No. 12 CIV. 7948, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013). This threat alone disqualifies Wisner and Hackett and Ramiz from consideration, for it is "sufficient to conclude that the issue is quite likely to be raised by Defendants to the detriment of the putative class." *Snap*, 2019 WL 2223800, at *3. Conversely, Wisner and Hackett and Ramiz's unusual in-and-out trading patterns might incentivize them to pursue an unconventional theory of the fraud merely to ensure that they maintain standing and/or to maximize their own recoverable losses.

10

Further, in addition to being a serial in-and-out trader, Ramiz also purchased and sold SoundHound stock repeatedly even during single trading days, making him a pattern high-frequency day trader. Courts generally deny lead plaintiff motions by day traders, as such investors "typically focus[] on technical price movements rather than price, and therefore are subject to a defense the they would have purchased the stock at issue regardless of the misstatement/omission". *Applestein*, 2010 WL 3749406, at *3 (internal quotations omitted); *see also Eichenholtz*, 2008 WL 3925289, at *11 (N.D. Cal. Aug. 22, 2008) (finding that a "day-trader would not be typical of the class because the class's damages stem from reliance upon the company's financial statements, not upon daily market volatility. Specifically, it may be subject to a unique defense regarding its reliance upon publicly available information."); *Enphase*, 2020 WL 7025085, at *7-8 (N.D. Cal. Nov. 30, 2020) (same). Here, Ramiz both purchased and sold SoundHound stock on *29* of the *36* days on which he traded shares and, on several of the days in which he both purchased and sold SoundHound stock, Ramiz cumulatively traded tens of thousands of shares. *See* Dkt. No. 10-3 at 3-95.

To provide an example of Ramiz's high-frequency day trading over the course of just *one week*: on December 4, 2024, Ramiz acquired *80,000* shares of SoundHound stock via *117* separate purchases and sold *110,000* shares of SoundHound stock via *39* separate sales transactions (*see id.* at 11-15); on December 6, 2024, Ramiz acquired and sold *129,761* shares of SoundHound stock via *197* separate purchases and *154* separate sales transactions, respectively (*see id.* at 19-28); and, on December 10, 2024, Ramiz acquired *173,855* shares of SoundHound stock via *546* separate purchases and sold *125,855* shares of SoundHound stock via *45* separate sales transactions (*see id.* at 33-48). Given the sheer volume of same-day purchases and sales listed in the *94-page* schedule setting forth Ramiz's approximately *3,700* Class Period transactions in SoundHound stock, it is clear that Ramiz was trading based on daily market volatility rather than in reliance upon the Defendants' alleged misrepresentations. *See*, *e.g.*, *Farhar v. Ontrak, Inc.*, No. 2:21-cv-01987-FLA (Ex), 2021 WL 2980589, at *4 (C.D. Cal. July 13, 2021) (finding that

11

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ST. JOHN FAMILY TRUST U/A DTD 08/19/1991 AND PAYAL DAVE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:25-cv-02915-RFL

movant that purported to have the largest financial interest was "not a typical plaintiff under Fed. R. Civ. P. 23 because he [was] a high frequency trader that may be subject to unique defenses") (citing *Applestein*, 2010 WL 3749406, at *3).

Wisner and Hackett and Ramiz's unorthodox trading patterns render them atypical of the Class that they seek to represent. A typical Class member in this litigation would have simply purchased SoundHound securities in reliance upon the Defendants' statements, in the good-faith expectation that those shares would appreciate in value. By contrast, Wisner and Hackett and Ramiz's trading patterns demonstrate that they were trading based on market volatility with the goal of realizing a short-term profit, rather than making a long-term investment in the Company based on its business performance or alleged misstatements. Wisner and Hackett and Ramiz's unorthodox trading strategies thus make them exceptionally ill-suited to serve as Class representatives, which is precisely why Wisner and Hackett and Ramiz's atypicality mandates denial of their motions.

### C. Wisner and Hackett and Ramiz's Unorthodox Trading Subject Them to Disqualifying Unique Defenses

Not only do Wisner and Hackett and Ramiz's unorthodox trading strategies render them inadequate and atypical of the Class they seek to represent, they also subject them to unique defenses that further mandate denial of their motions. The PSLRA precludes the appointment of a lead plaintiff who is "subject to unique defenses that render [him] incapable of representing the class." 15 U.S.C. § 78u-4(a)(3)(B)(iii)(II)(bb). "The PSLRA . . . provides that we ask simply whether [a movant] is likely to be 'subject to' the unique defense . . . ; we do not have to determine that the defense is likely to succeed." *In re Bally Total Fitness Sec. Litig.*, Nos. 04 C 3530 *et al.*, 2005 WL 627960, at *6 (N.D. Ill. Mar. 15, 2005); *see also In re Netflix, Inc., Sec. Litig.*, Nos. 12-0225 SC *et al.*, 2012 WL 1496171, at *5 (N.D. Cal. Apr. 26, 2012) ("There is no requirement at this early stage to prove a defense, only to show a degree of likelihood that a unique defense might play a significant role at trial. The point of this requirement is not to adjudicate the case before it

has even begun, but rather to protect the absent class members from the expense of litigating defenses applicable to lead plaintiffs but not to the class as a whole.") (internal citations omitted).

Here, as discussed *supra*, Wisner and Hackett and Ramiz employed several unusual trading strategies with respect to their Class Period investments in SoundHound securities. If the Court were to appoint either Wisner and Hackett or Ramiz as Lead Plaintiff, then these strategies will give the Defendants ample ammunition to use at the class certification stage of this litigation, when they will, inevitably, argue that Wisner and Hackett or Ramiz plainly cannot be entitled to rely on the *Basic* presumption of reliance premised upon "fraud-on-the-market."

> [T]he *Basic* Court established a rebuttable presumption of reliance, predicated on the notion that '[a]n investor who buys or sells stock at the price set by the market does so in reliance on the integrity of that price. Because most publicly available information is reflected in market price, an investor's reliance on any public material misrepresentations . . . may be presumed for purposes of a Rule 10b-5 action." To invoke Basic's presumption of reliance, "a plaintiff must prove that: (1) the alleged misrepresentations were publicly known, (2) they were material, (3) the stock traded in an efficient market, and (4) the plaintiff traded the stock between when the misrepresentations were made and when the truth was revealed."

*Howard v. Liquidity Servs.*, 322 F.R.D. 103, 116 (D.D.C. 2017) (citations omitted).

The *Basic* court held that "*[a]ny* showing that severs the link between the alleged misrepresentation and . . . [plaintiff's] decision to trade at a fair market price[] will be sufficient to rebut the presumption of reliance." *Basic*, 485 U.S. at 248 (emphasis added). In that case, which involved news of a corporate merger, the court stated, for example, that a plaintiff who was aware of the truth of the merger discussions "but sold his shares nevertheless because of unrelated concerns . . . *could not be said to have relied upon the integrity of the price he knew had been manipulated*." *Id.* at 249. Here, on *Basic's* rationale, Wisner and Hackett and Ramiz's in-and-out trading, as well as Ramiz's high-frequency day trading, raise serious questions about their reliance on the Defendants' alleged misstatements, as it suggests that their trading strategies were designed to capitalize on short-term fluctuations in the price of SoundHound stock, and thus that they would have traded as they did *irrespective of the Defendants' alleged misstatements*. *See*,

*e.g.*, *Sunpower*, 2022 WL 10208559, at *3 (finding that in-and-out trader "[did] not meet the typicality or adequacy requirements of Rule 23, as he would, at minimum, be subject to unique defenses regarding loss causation and his reliance on Defendants' misrepresentations"); *Enphase Energy*, 2020 WL 7025085, at *7-8 (same). *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 241 (E.D.N.Y. 2011) (finding that a movant fund failed to demonstrate adequacy because it was an in-and-out trader and "may be unable to demonstrate loss causation").

Wisner and Hackett and Ramiz's transactions in SoundHound securities are at best idiosyncratic. If either Wisner and Hackett or Ramiz are appointed as Lead Plaintiff, Defendants will foreseeably attempt to rebut the *Basic* presumption by demonstrating that their unorthodox investment decisions were ***not*** made in reliance upon the Defendants' alleged misrepresentations. In the worst-case scenario, the Defendants will succeed in doing so, to the obvious prejudice of the Class. Even in the best-case scenario, both Wisner and Hackett and Ramiz would be forced to devote considerable time and energy to litigating issues that are unique to their own Class Period investment strategy, at the expense of prosecuting the Class's fraud claims. There is no reason to saddle the Class in this litigation with a Lead Plaintiff subject to these unique defenses.

### D.    Wisner's Past Conduct Raises Questions As To His Readiness to Serve as a Fiduciary

Finally, the Trust and Dave respectfully submit that Wisner's apparent past misconduct raises significant questions about his readiness to serve as a class representative in this litigation—a fiduciary responsibility that will entrust him with prosecuting the fraud claims of absent Class members. "[O]n more than one occasion courts have found that an individual is an inadequate lead plaintiff due to unrelated misconduct which implicates the individual's ability to serve as a fiduciary." *In re Surebeam Corp. Secs. Litig.*, NO. 03-CV-1721 JM (POR), 2004 WL 5159061, at *7 (S.D. Cal. Dec. 31, 2003). *See also AcelRx Pharms.*, 2021 WL 5964596, at *4 (denying lead plaintiff motion based on movant's prior embezzlement conviction, citing a "concern that his personal conduct will at least be a distraction from the case")*; In re Network Assocs. Secs. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999) (finding lead plaintiff movant inadequate due

to unrelated fraud investigation); *Newman v. Eagle Bldg. Techs.*, 209 F.R.D. 499, 504-05 (S.D. Fla. 2002) (lead plaintiff movant inadequate where concerns existed with respect to his ability to serve as a fiduciary due to unrelated prior conduct); *Villare v. Abiomed, Inc.*, 19 Civ. 7319 (ER) *et al.*, 2020 WL 3497285, at *7 (S.D.N.Y. June 29, 2020) (denying motion by movant with prior fraud conviction, finding that "a criminal fraud conviction ten years ago remains extremely concerning for an individual seeking to serve as a fiduciary for absent class members asserting they are the victims of a fraudulent scheme"); *Schleicher v. Wendt*, 1:02-cv-1332-DFH-TAB, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009) (finding proposed class representative inadequate due to a past criminal conviction for insurance fraud).

Here, from a review of publicly available information, Wisner apparently had multiple encounters with law enforcement involving facially serious criminal offenses between 2003 and 2012. Specifically, a public records summary obtained from LexisNexis indicates that Wisner was, among other things: convicted for burglary of a vehicle, a misdemeanor offense, in 2003; charged with forgery, a felony offense, in 2003; convicted for robbery, a felony offense, in 2004; and convicted for endangering a child, a felony offense, in 2012. *See* Pafiti Opp. Decl., Ex. A. Wisner's background should plainly give the Court pause about entrusting him to pursue the Class's fraud claims in this litigation.

## IV.    CONCLUSION

For the foregoing reasons, the Trust and Dave respectfully request that the Court issue an Order: (1) appointing the Trust and Dave as Co-Lead Plaintiffs for the Class; and (2) approving the Trust and Dave's selection of Pomerantz as Lead Counsel for the Class.

Dated: June 10, 2025                                        Respectfully submitted,

                                                                      POMERANTZ LLP

                                                                      */s/ Jennifer Pafiti*
                                                                      Jennifer Pafiti (SBN 282790)
                                                                      1100 Glendon Avenue, 15th Floor
                                                                      Los Angeles, California 90024

Telephone: (310) 405-7190
jpafiti@pomlaw.com

POMERANTZ LLP
Jeremy A. Lieberman (*pro hac vice*)
J. Alexander Hood II (*pro hac vice*)
600 Third Avenue, 20th Floor
New York, New York 10016
Telephone: (212) 661-1100
Facsimile: (917) 463-1044
jalieberman@pomlaw.com
ahood@pomlaw.com

*Counsel for Co-Lead Plaintiff Movants St. John Family Trust U/A DTD 08/19/1991 and Payal Dave and Proposed Lead Counsel for the Class*

KEHOE LAW FIRM, P.C.
Michael K. Yarnoff
(*pro hac vice* application forthcoming)
2001 Market Street
Suite 2500
Philadelphia, Pennsylvania 19103
Telephone: (215) 792-6676
myarnoff@kehoelawfirm.com

*Additional Counsel for Co-Lead Plaintiff Movants St. John Family Trust U/A DTD 08/19/1991 and Payal Dave*

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ST. JOHN FAMILY TRUST U/A DTD 08/19/1991 AND PAYAL DAVE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:25-cv-02915-RFL

## **PROOF OF SERVICE**

I hereby certify that on June 10, 2025, a copy of the foregoing was filed electronically and served by mail on anyone unable to accept electronic filing.  Notice of this filing will be sent by e-mail to all parties by operation of the Court's electronic filing system or by mail to anyone unable to accept electronic filing as indicated on the Notice of Electronic Filing.  Parties may access this filing through the Court's CM/ECF system.

*/s/ Jennifer Pafiti*
Jennifer Pafiti

MEMORANDUM OF LAW: (1) IN FURTHER SUPPORT OF MOTION OF ST. JOHN FAMILY TRUST U/A DTD 08/19/1991 AND PAYAL DAVE FOR APPOINTMENT AS CO-LEAD PLAINTIFFS AND APPROVAL OF LEAD COUNSEL; AND (2) IN OPPOSITION TO COMPETING MOTIONS - 3:25-cv-02915-RFL