Lisa T. Omoto SBN 303830
E-mail: lomoto@faruqilaw.com
**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067
Telephone: 424-256-2884
Facsimile: 424-256-2885

James M. Wilson, Jr. (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email:  jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for Proposed Lead Plaintiff
Samih Ramiz*

# UNITED STATES DISTRICT COURT

## NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| TREVAR LILES, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>SOUNDHOUND AI, INC., KEYVAN MOHAJER, and NITESH SHARAN,<br><br>Defendants. | Case No. 5:25-cv-02915-RFL<br><br>**SAMIH RAMIZ'S REPLY MEMORANDUM OF LAW IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS**<br><br>**<u>CLASS ACTION</u>**<br><br>Judge:  Hon. Rita F. Lin<br>Date:    July 1, 2025<br>Time:   10:00 a.m.<br>Courtroom:   15 – 18th Floor |

# TABLE OF CONTENTS

INTRODUCTION .................................................................................................................. 1

ARGUMENT ...................................................................................................................... 3

I.    THE WISNER AND HACKETT GROUP IS DISQUALIFIED – WISNER FAILED TO BE UPFRONT WITH THE COURT ABOUT HIS PRIOR FELONY CRIMINAL HISTORY ........................................................................................... 3

II.   THE TRUST IS SUBJECT TO A UNIQUE DEFENSE AS TO STANDING.................. 3

III.  THE GROUPS ARE LAWYER DRIVEN AND APPEAR TO HAVE BEEN PUT TOGETHER TO AGGREGATE LOSSES ................................................................. 4

IV.   RAMIZ'S INDIVIDUAL *DURA* LOSSES ARE HIGHER THAN THE OTHER MOVANTS' .............................................................................................................. 5

V.    RAMIZ IS A TYPICAL AND ADEQUATE CLASS REPRESENTATIVE AND SHOULD BE APPOINTED LEAD PLAINTIFF ..................................................... 6

      A.    Ramiz Does Not Meet The Definition Of An In-and-Out Trader ......................... 6

      B.    Ramiz's Trading Pattern Does Not Render Him Atypical, Inadequate Or Subject To Unique Defenses................................................................. 8

VI.   RAMIZ'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED .......................................................................................... 10

VII.  CONCLUSION.................................................................................................... 10

SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL

# TABLE OF AUTHORITIES

**Cases**                                                                                                 **Page(s)**

*Applestein v. Medivation Inc*,
    No. C 10-00998 MHP, 2010 WL 3749406 (N.D. Cal. Sept. 20, 2010)....................................8

*Armour v. Network Assocs., Inc.*,
    171 F. Supp. 2d 1044 (N.D. Cal. 2001) ...............................................................................7

*Aronson v. McKesson HBOC, Inc.*,
    79 F. Supp. 2d 1146 (N.D. Cal. 1999) ................................................................................4

*In re Bank of Am. Corp.*,
    No. MDL 09-02014 JSW, 2009 WL 2710413 (N.D. Cal. Aug. 26, 2009)..............................4

*Basic, Inc. v. Levinson*,
    485 U.S. 224 (1988).........................................................................................................9

*Bensley v. FalconStor Software, Inc.*,
    277 F.R.D. 231 (E.D.N.Y. 2011) .......................................................................................7

*Bhojwani v. Pistiolis*,
    No. 06 Civ. 13761(CM)(KNF), 2007 WL 2197836 (S.D.N.Y. June 26, 2007) .......................3

*Bruce v. Suntech Power Holdings Co.*,
    No. CV 12-04061 RS, 2012 WL 5927985 (N.D. Cal. Nov. 13, 2012)....................................4

*China Agritech, Inc. v. Resh*,
    584 U.S. 732 (2018)........................................................................................................4

*Conn. Ret. Plans & Tr. Funds v. Amgen, Inc.*,
    No. CV 07-2536 PSG, 2009 WL 2633743 (C.D. Cal. Aug. 12, 2009)....................................2

*Crossen v. CV Therapeutics*,
    No. C 03-03709 SI, 2005 WL 1910928 (N.D. Cal. Aug. 10, 2005) ........................................9

*Doherty v. Pivotal Software, Inc.*,
    No. 3:19-cv-03598-CRB, 2019 WL 5864581 (N.D. Cal. Nov. 8, 2019)..................................7

*Dura Pharmaceuticals, Inc. v. Broudo*,
    544 U.S. 336 (2005).................................................................................................1, 2, 5, 6

*Eichenholtz v. Verifone Holdings, Inc.*,
    No. C 07-06140 MHP, 2008 WL 3925289 (N.D. Cal. Aug. 22, 2008)................................4, 8

*Farhar v. Ontrak, Inc.*,
    No. 2:21-cv-01987-FLA (Ex), 2021 WL 2980589 (C.D. Cal. July 13, 2021) .........................8

SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT
OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL
AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL

*Freeland v. Iridium World Commc'ns, Ltd.*,
    233 F.R.D. 40 (D.D.C. 2006)............................................................................2

*Hurst v. Enphase Energy, Inc.*,
    No. 20-cv-04036-BLF, 2020 WL 7025085 (N.D. Cal. Nov. 30, 2020) ...............7, 8

*Jaszczyszyn v. SunPower Corp.*,
    No. 22-cv-00956-HSG, 2022 WL 10208559 (N.D. Cal. Oct. 13, 2022)..................6

*Johnson v. OCZ Tech. Grp., Inc.*,
    No. CV 12-05265 RS, 2013 WL 75774 (N.D. Cal. Jan. 4, 2013) .............................4

*Marjanian v. Allied Nev. Gold Corp.*,
    No. 3:14-CV-0175-LRH-WGC, 2014 WL 12769810 (D. Nev. Nov. 7, 2014) ........5

*Mustafin v. GreenSky, Inc.*,
    No. 18 CIV. 11071 (PAE), 2019 WL 1428594 (S.D.N.Y. Mar. 29, 2019) ..............4

*In re Network Assocs., Inc., Sec. Litig.*,
    76 F. Supp. 2d 1017 (N.D. Cal. 1999) .....................................................................3

*Pearlstein v. BlackBerry Ltd.*,
    No. 13 Civ. 7060 (CM), 2021 WL 253453 (S.D.N.Y. Jan. 26, 2021)......................6

*In re Peregrine Systems, Inc. Securities Litigation*,
    No. CIV.02 CV 870-J(RBB), 2002 WL 32769239 (S.D. Cal. Oct. 11, 2002) ........10

*Petrie v. Elec. Game Card, Inc.*,
    No. SACV 10-0252 DOC (RNBx), 2010 WL 2292288 (C.D. Cal. June 4, 2010)....4

*In re Petrobras Securities Litigation*,
    104 F. Supp. 3d 618 (S.D.N.Y. 2015)......................................................................10

*In re Petrobras Sec. Litig.*,
    312 F.R.D. 354 (S.D.N.Y. 2016) ...............................................................................9

*Porzio v. Overseas Shipholding Grp.*,
    No. 12 Civ. 7948, 2013 WL 407678 (S.D.N.Y. Feb. 1, 2013) ................................7

*Prefontaine v. Research in Motion Ltd.*,
    No. 11 Civ. 4068(RJS), 2012 WL 104770 (S.D.N.Y. Jan. 5, 2012).........................8

*In re Regions Morgan Keegan Closed-End Fund Litig.*,
    No. 07-02830, MDL 2009, 2010 WL 5173851 (W.D. Tenn. Dec. 15, 2010) .........9

*Rieckborn v. Velti PLC*,
    No. 13-cv-03889-WHO, 2013 WL 6354597 (N.D. Cal. Dec. 3, 2013)....................6

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

*Robb v. Fitbit Inc.*,
    No. 16-CV-00151-SI, 2016 WL 2654351 (N.D. Cal. May 10, 2016) ....................................4

*In re Royal Ahold N.V. Sec. & ERISA Litig.*,
    219 F.R.D. 343 (D. Md. 2003)....................................................................................9, 10

*Ruland v. InfoSonics Corp.*,
    No. 06CV1231 BTMWMC, 2006 WL 3746716 (S.D. Cal. Oct. 23, 2006) .............................6

*Sallustro v. CannaVest Corp.*,
    93 F. Supp. 3d 265 (S.D.N.Y. 2015)...........................................................................5

*Scheller v. Nutanix, Inc.*,
    No. 19-cv-01651-WHO, 2021 WL 2410832 (N.D. Cal. June 10, 2021)................................10

*Schleicher v. Wendt*,
    No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157 (S.D. Ind. Mar. 20, 2009) ...........................3

*Schriver v. Impac Mortg. Holdings, Inc.*,
    No. SACV 06-31 CJC (RNBx), 2006 WL 6886020 (C.D. Cal. May 2, 2006) ........................4

*Schueneman v. Arena Pharms., Inc.*,
    No. 10cv1959 BTM(BLM), 2011 WL 3475380 (S.D. Cal. Aug. 8, 2011) ..........................5, 8

*Serafimov v. Netopia, Inc.*,
    No. C-04-03364 RMW, 2004 WL 7334061 (N.D. Cal. Dec. 3, 2004)....................................9

*Sklar v. Amarin Corp. PLC*,
    No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248 (D.N.J. July 29, 2014)..........................2, 8

*In re Snap Inc. Sec. Litig.*,
    No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800 (C.D. Cal. Apr. 1, 2019)........................7

*Sneed v. AcelRX Pharms., Inc.*,
    No. 21-cv-04353-BLF, 2021 WL 5964596 (N.D. Cal. Dec. 16, 2021)....................................3

*In re UTStarcom, Inc. Sec. Litig.*,
    No. C 04-04908 JW, 2010 WL 1945737 (N.D. Cal. May 12, 2010)........................................9

*Xianglin Shi v. Sina Corp.*,
    No. 05 Civ. 2154(NRB), 2005 WL 1561438 (S.D.N.Y. July 1, 2005)....................................3

*In re Zynga Inc. Sec Litig.*,
    No. C. 12-04007, JSW, 2013 WL 257161 (N.D. Cal. Jan 23, 2013)....................................2, 8

**Statutes**

15 U.S.C. § 78u-4(a)(3)(B) ..............................................................................................2

iv

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

Samih Ramiz ("Ramiz") respectfully submits this reply to the oppositions filed by movants Wisner and Hackett[1] ("Wisner/Hackett Opp.") (ECF No. 37) and the Trust and Dave ("Trust/Dave Opp.") (ECF No. 36) and in further support of his motion to be appointed lead plaintiff and his counsel appointed as lead counsel.

## INTRODUCTION

Of the three remaining movants seeking to be appointed Lead Plaintiff in this Action, only Ramiz's motion should be granted – he is the only movant with the largest individual financial interest in the case – at $319,561.32 estimated LIFO losses – **and** who satisfies Rule 23's adequacy requirement.

As argued by Ramiz in his opposition papers (ECF No. 38), the motions by the other two group movants should be denied for the following reasons:

- Tamar Wisner (of Wisner and Hackett) does not dispute that he failed to be upfront with the Court in his opening papers to disclose his prior convictions. *See* Wisner/Hackett Opp. 9 n.3;

- Matthew Winn (purported trustee of the St. John Family Trust U/A DTD 08/19/1991) failed to substantiate that he has authority to bring suit on behalf of the Trust, or that the SoundHound stock was purchased by the Trust for standing purposes; and

- Each group is an impermissible lawyer-driven group assembled on the lead plaintiff deadline to aggregate losses.

The groups argue against Ramiz's appointment by trying to speculate that he might be subject to a unique defense based on the timing and frequency of his transactions. Wisner and Hackett argue that instead of using the accepted LIFO calculation, Ramiz's losses should be treated as lower based on *Dura Pharmaceuticals, Inc. v. Broudo*, 544 U.S. 336 (2005). Wisner/Hackett Opp. 5-6. However, even applying principles from *Dura*, Wisner and Hackett should not have skewed Ramiz's losses by

---

[1] All terms not defined herein have the same meaning as in the Notice of Motion and Motion of Samih Ramiz for Appointment as Lead Plaintiff and Approval of Lead Counsel; Memorandum of Points and Authorities in Support Thereof ("Opening Brief"), ECF No. 10, and Ramiz's Memorandum of Law in Opposition to Competing Motion for Appointment as Lead Plaintiff and Approval of Lead Counsel ("Ramiz Opp."). ECF No. 38. Unless otherwise noted, all emphasis is added and all citations and internal quotations marks are omitted.

1

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

offsetting his LIFO losses only with intra-Class Period losses and not accounting for intra-Class Period gains (which they themselves argued is the proper way to measure *Dura* LIFO losses (*see* Wisner/Hackett Opening Br. 5 n.5 (ECF No. 21) and chart at ECF No. 21-3)). Under *Dura* principals, if one disregards gains and losses not attributable to the alleged fraud from intra-Class Period transactions, Ramiz's individual LIFO losses are **$732,663.57 – still greater than Wisner/Hackett's individual losses calculated using the same *Dura* principles.**

Next, the Trust and Dave argue that Ramiz should be disqualified because he is an "in-and-out" and a "day trader." Trust/Dave Opp. 3-4, 8-14. However, Ramiz held nearly 59,000 SoundHound shares through each corrective disclosure alleged in the operative complaint. Omoto Decl., Ex. C at 1 (ECF No. 10-4). Courts reject the contention that "in-and-out" trades disqualifies a shareholder from serving in a representative capacity for all shareholders in a class. *See e.g., Conn. Ret. Plans & Tr. Funds v. Amgen, Inc.,* No. CV 07-2536 PSG (PLAx), 2009 WL 2633743, at *6-8 (C.D. Cal. Aug. 12, 2009), *aff'd*, 660 F.3d 1170 (9th Cir. 2011), *aff'd*, 568 U.S. 455 (2013); *see also Freeland v. Iridium World Commc'ns, Ltd.*, 233 F.R.D. 40, 48-49 (D.D.C. 2006) (appointing "in and out" trader and finding them to be an adequate class representative). Courts similarly reject the argument that frequency of trades disqualifies a movant from serving as a representative. *See e.g. In re Zynga Inc. Sec Litig.*, No. C. 12-04007, JSW, 2013 WL 257161, at *2 (N.D. Cal. Jan 23, 2013) (frequency of trading "inconsequential to [movant's] request to be appointed lead plaintiff."); *Sklar v. Amarin Corp. PLC*, No. 13-cv-06663 (FLW)(TJB), 2014 WL 3748248, at *7-8 (D.N.J. July 29, 2014) (adopting the majority view that "whether [a] movant is a day trader is inconsequential to his request to be appointed lead plaintiff.").

At bottom, Ramiz is the single investor who suffered the largest losses and meets Rule 23's adequacy requirement and should therefore be appointed lead plaintiff pursuant to 15 U.S.C. § 78u-4(a)(3)(B).

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

## ARGUMENT

**I.     THE WISNER AND HACKETT GROUP IS DISQUALIFIED – WISNER FAILED TO BE UPFRONT WITH THE COURT ABOUT HIS PRIOR FELONY CRIMINAL HISTORY**

Wisner does not dispute that he failed to be upfront with the Court about his extensive criminal history including, most notably, his prior felony arrest for forgery of a financial instrument under Texas Penal Code § 32.21(d), which goes directly to his honesty and trustworthiness, and renders him unfit to serve as a fiduciary on behalf of a class of investors who suffered damages as a result of another's alleged fraud. *In re Network Assocs., Inc., Sec. Litig.*, 76 F. Supp. 2d 1017, 1029 (N.D. Cal. 1999); *Schleicher v. Wendt*, No. 1:02-cv-1332-DFH-TAB, 2009 WL 761157, at *3 (S.D. Ind. Mar. 20, 2009), *aff'd*, 618 F.3d 679 (7th Cir. 2010); *Xianglin Shi v. Sina Corp.*, No. 05 Civ. 2154(NRB), 2005 WL 1561438, at *4 (S.D.N.Y. July 1, 2005). Wisner's criminal conduct and his failure to inform the Court about it is disqualifying. *See e.g., Sneed v. AcelRX Pharms., Inc.*, No. 21-cv-04353-BLF, 2021 WL 5964596, at *4 (N.D. Cal. Dec. 16, 2021).

**II.    THE TRUST IS SUBJECT TO A UNIQUE DEFENSE AS TO STANDING**

Despite Mr. Winn's general assertions that he has authority to bind the Trust in connection with this litigation, he has failed to put forth documentation, including in a second round of briefing, that he has authority to sue on the Trust's behalf or cause it to purchase or sell the securities that led to the beneficiaries of the Trust's damages. *See* Trust/Dave Opp.  Because the extent of Mr. Winn's authority to act as trustee on behalf of the Trust is unknown, it is unclear whether the Trust has standing to assert claims on behalf of SoundHound shareholders who suffered damages as a result of Defendants' alleged fraud.  These unanswered questions – which undoubtedly will be raised by Defendants at class certification - subject the Trust and Dave to unique defenses that may very well become the focus of this litigation should they be appointed lead plaintiff. *See e.g., Bhojwani v. Pistiolis*, No. 06 Civ. 13761(CM)(KNF), 2007 WL 2197836, at *5 (S.D.N.Y. June 26, 2007)*, report and recommendation adopted in part, rejected in part on different grounds*, No. 06 Civ. 13761(CM)(NKF), 2007 WL 9228588 (S.D.N.Y. July 31, 2007)

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

(trustee's claim to authority over trust accounts, without documentation, insufficient to establish necessary authority over trusts).

## III.    THE GROUPS ARE LAWYER DRIVEN AND APPEAR TO HAVE BEEN PUT TOGETHER TO AGGREGATE LOSSES

While Wisner and Hackett and the Trust and Dave collectively claim greater losses than Ramiz, their attempt at artificially aggregating the losses of unrelated investors should be rejected. Indeed, it is apparent that Wisner and Hackett and the Trust and Dave were cobbled together by their counsel, on the same day lead plaintiff motions were due.  This would have been not for betterment of class leadership, but, the sole purpose of achieving the largest financial interest in this action. Pafiti Decl., Exs. C, D, ECF Nos. 18-5, 18-6; Apton Decl., Exs. A, D, ECF Nos. 21-2, 21-5.  This type of lawyer-driven litigation is admonished by courts and routinely subjects its members to disqualification.  *Aronson v. McKesson HBOC, Inc.*, 79 F. Supp. 2d 1146, 1153 (N.D. Cal. 1999); *Eichenholtz v. Verifone Holdings, Inc.,* No. C 07-06140 MHP, 2008 WL 3925289, at *8 (N.D. Cal. Aug. 22, 2008).[2]

---

[2]    The cases the competing movants use to support the appointment of groups of investors as lead plaintiffs are inapposite.  *See e.g., In re Bank of Am. Corp.*, No. MDL 09-02014 JSW, 2009 WL 2710413, at *3 (N.D. Cal. Aug. 26, 2009) (group members' joint declaration explained exactly how the members were brought together); *Schriver v. Impac Mortg. Holdings, Inc.*, No. SACV 06-31 CJC (RNBx), 2006 WL 6886020, at *9-10 (C.D. Cal. May 2, 2006) (a member of the appointed group's "claimed individual loss exceeds the claimed individual loss of any other individual putative plaintiff" and the group submitted a detailed joint declaration regarding litigation strategy); *Johnson v. OCZ Tech. Grp., Inc.*, No. CV 12-05265 RS, 2013 WL 75774, at *3 (N.D. Cal. Jan. 4, 2013) (joint declaration also reflected discussions of litigation strategy); *China Agritech, Inc. v. Resh*, 584 U.S. 732, 736 (2018) (not discussing appointing groups of investors, but rather dealing with whether one can "commence a class action anew beyond the time allowed by the applicable statute of limitations"); *Mustafin v. GreenSky, Inc.*, No. 18 CIV. 11071 (PAE), 2019 WL 1428594, at *5 (S.D.N.Y. Mar. 29, 2019) (group of investors who faced no-opposition submitted joint declarations "demonstrat[ing] their intent to participate directly in this litigation . . . ."); *Petrie v. Elec. Game Card, Inc.*, No. SACV 10-0252 DOC (RNBx), 2010 WL 2292288, at *2 (C.D. Cal. June 4, 2010) (appointing a group of investors, "two of whom were married[,]"); *Robb v. Fitbit Inc.*, No. 16-CV-00151-SI, 2016 WL 2654351, at *4 (N.D. Cal. May 10, 2016) (group of investors, who submitted a far more detailed joint declaration); *Bruce v. Suntech Power Holdings Co.*, No. CV 12-04061 RS, 2012 WL 5927985, at *3 (N.D. Cal. Nov. 13, 2012) (an investor within the group appointed lead plaintiff had individual losses exceeding any other movant).

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

## IV.    RAMIZ'S INDIVIDUAL *DURA* LOSSES ARE HIGHER THAN THE OTHER MOVANTS'

Wisner and Hackett assert that Ramiz is "only entitled to recover approximately $229,016.27" by applying the recoverable loss method in accordance with *Dura*. Wisner/Hackett Opp. 4-6.    ***However, applying Wisner and Hackett's own methodology for calculating Dura losses, that takes into account intra-Class Period losses and gains, then Ramiz's recoverable losses under Dura are far greater than the other movants' losses.***

Under *Dura*, courts place "the greatest weight on the number of net shares purchased during the class period and ***disregard losses and gains*** resulting from trades that occurred prior to disclosure of the defendant's alleged fraud." *Schueneman v. Arena Pharms., Inc.*, No. 10cv1959 BTM(BLM), 2011 WL 3475380, at *3 (S.D. Cal. Aug. 8, 2011). While Wisner and Hackett exclude Ramiz's losses on shares sold prior to the corrective disclosure, their calculation conveniently ***includes*** Ramiz's profits on such transactions. This flawed calculation incorrectly reduces Ramiz's recoverable losses. Indeed, in Wisner/Hackett's Opening Brief, they calculate their own recoverable *Dura* losses to be "$886,158.26 when ***disregarding gains and losses*** not attributable to the alleged fraud from intra-class period sales matched to intra-class period purchases." ECF No. 21 at 5 n.5.    With the benefit of hindsight (that excluding Ramiz's pre-disclosure gains would show Ramiz suffered greater losses), Wisner and Hackett changed their method for calculating recoverable *Dura* losses in their opposition briefing. Accordingly, under a proper *Dura* analysis, Ramiz suffered $732,663.57 in recoverable losses and purchased over 58,000 net shares of SoundHound: an amount far greater than any other individual movant:[3]

---

[3]    The authorities Hackett and Wisner use to advance their point either did not involve an instance where the movant had pre-disclosure gains, *Sallustro v. CannaVest Corp.*, 93 F. Supp. 3d 265, 275 (S.D.N.Y. 2015), or did not calculate losses according to a movant's recoverable losses. *Marjanian v. Allied Nev. Gold Corp.*, No. 3:14-CV-0175-LRH-WGC, 2014 WL 12769810, at *5 (D. Nev. Nov. 7, 2014).

5

| Movant | Gross Shares Purchased | Net Shares Purchased | Net Funds Expended | *Dura* Losses |
|---|---|---|---|---|
| **Samih Ramiz** | **1,370,180** | **58,794** | **$868,706.90** | **$732,663.57** |
| William Hackett | 186,900 | 37,000 | $604,391.27 | $452,862.76 |
| Tamar Wisner | 75,820 | 50,820 | $753,424.21 | $433,295.65 |
| St. John Family Trust U/A DTD 08/19/1991 | 15,100 | 15,100 | $372,144.03 | $225,447.53 |
| Payal Dave | 107,532 | 9,437 | $259,812.47 | $116,581.15 |

See e.g., *Ruland v. InfoSonics Corp.*, No. 06CV1231 BTMWMC, 2006 WL 3746716, at *5-6 (S.D. Cal. Oct. 23, 2006) (applying *Dura* by "ignoring . . . losses or gains" on transactions prior to the corrective disclosure and "focusing . . . on the net number of shares purchased.").

**V.    RAMIZ IS A TYPICAL AND ADEQUATE CLASS REPRESENTATIVE AND SHOULD BE APPOINTED LEAD PLAINTIFF**

**A.    Ramiz Does Not Meet The Definition Of An In-and-Out Trader**

Despite the volume of Ramiz's trading, he is not an in-and-out trader. An in-and-out trader is one who sells ***all of their shares*** before a company discloses information that corrects an earlier mistake and may therefore be subject to a unique defense insofar as they are unable to establish loss causation. *See Rieckborn v. Velti PLC*, No. 13-cv-03889-WHO, 2013 WL 6354597, at *4 (N.D. Cal. Dec. 3, 2013). Throughout each corrective disclosure alleged in the operative complaint, ***Ramiz maintained a significant position in SoundHound, holding close to 59,000 shares***—substantially more than any other individual movant. *See* Omoto Decl., Ex. C, ECF No. 10-4 at 1; *Pearlstein v. BlackBerry Ltd.*, No. 13 Civ. 7060 (CM), 2021 WL 253453, at *11 (S.D.N.Y. Jan. 26, 2021) ("In-and-out traders are those who both purchase and sell ***all of their shares*** prior to a corrective disclosure").

Tellingly, the Trust and Dave's authorities that disqualify "in and out" traders only do so where they sold a large majority of, if not entirely disposed of, their position prior to the disclosures revealing Defendants' allegedly fraudulent conduct. *See e.g.*, *Jaszczyszyn v. SunPower Corp.*, No. 22-cv-00956-HSG, 2022 WL 10208559, at *2 (N.D. Cal. Oct. 13, 2022) ("[Movant] cannot

6

establish a viable securities fraud claim because he is an in-and-out trader *who sold all his shares before the public disclosure of the alleged fraudulent conduct*”); *Hurst v. Enphase Energy, Inc.*, No. 20-cv-04036-BLF, 2020 WL 7025085, at *8 (N.D. Cal. Nov. 30, 2020) (“[Movants] sold the *lion's share* of their class period Enphase stock acquisitions prior to” the corrective disclosure); *In re Snap Inc. Sec. Litig.*, No. 2:17-cv-03679-SVW-AGR, 2019 WL 2223800, at *3 (C.D. Cal. Apr. 1, 2019) (“NMSIC *sold* all of its stock prior to the final corrective disclosure”); *Porzio v. Overseas Shipholding Grp.*, No. 12 Civ. 7948, 2013 WL 407678, at *3 (S.D.N.Y. Feb. 1, 2013) (“[Movants] are in and out traders, meaning that they purchased the stock at the allegedly fraudulently inflated price *and sold it before the corrective disclosure[.]*”); *Bensley v. FalconStor Software, Inc.*, 277 F.R.D. 231, 237 (E.D.N.Y. 2011) (“[Movant] is a complete in and out trader, having purchased and *sold all of its shares prior to any revelation of fraud* on September 29, 2010.”).

The Trust and Dave speculate that Ramiz may be subject to unique defenses that would “likely [be] raised by Defendants.” Trust/Dave Opp. 10.  For example, the Trust and Dave argue that *if* an “Amended Complaint filed in this litigation alleges different corrective disclosures[,]” Ramiz may not have held “SoundHound securities on the dates of any corrective disclosures[.]” *Id.*  With nothing to support their bare contention, the Trust and Dave also speculate that Ramiz's “trading pattern *might* incentivize them to pursue an unconventional theory of the fraud” therefore subjecting them to unique defenses that would “likely [be] raised by Defendants . . . .” *Id.*  But these “speculative assertions,” untethered to a single allegation in the operative complaint, are insufficient. *Doherty v. Pivotal Software, Inc.*, No. 3:19-cv-03598-CRB, 2019 WL 5864581, at *6 (N.D. Cal. Nov. 8, 2019);  *see also Armour v. Network Assocs., Inc.*, 171 F. Supp. 2d 1044, 1053 (N.D. Cal. 2001) (competing movants “speculate that ... the timing of [movant's] stock purchases make[] its claims susceptible to a defense based on any corrective disclosures issued by [defendants] prior to [the movant's] first purchase . . . . [But] the PSLRA requires proof that the presumptively most adequate plaintiff will not fairly and adequately

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

protect the class or is subject to unique defenses.").

### B. Ramiz's Trading Pattern Does Not Render Him Atypical, Inadequate Or Subject To Unique Defenses

Wisner and Hackett and the Trust and Dave's attacks on the frequency of Ramiz's trading also fail. Wisner/Hackett Opp. 6-7; Trust/Dave Opp. 11-12. While Ramiz may have purchased and sold shares of SoundHound with frequency, this is not enough to render him atypical, inadequate or subject to unique defenses.

Indeed, the Ninth Circuit and other District Courts throughout the Country have found that the frequency with which a movant trades during the Class Period is inconsequential to their typicality or adequacy. *See, e.g., Zynga*, 2013 WL 257161, at *2 (frequency of trading "inconsequential to [movant's] request to be appointed lead plaintiff"); *Schueneman*, 2011 WL 3475380, at *7 (appointing alleged day trader); *Sklar*, 2014 WL 3748248, at *7-8 (finding that a trader who made an average of 18.2 trades over 250 days and as many as 117 in a single day was not precluded from being appointed lead status); *Prefontaine v. Research in Motion Ltd.*, No. 11 Civ. 4068(RJS), 2012 WL 104770, at *4 (S.D.N.Y. Jan. 5, 2012) ("[T]he prevailing view . . . is that day and momentum traders have the same incentives to prove defendants' liability as all other class members, and their presence in a securities class does not create intra-class conflicts.").[4]

To be sure, the fact that Hackett—like Ramiz—also engaged in high-frequency trading

---

[4]    The cases that the other movants use to argue the contrary are inapposite. *See e.g. Eichenholtz*, 2008 WL 3925289, at *10 (the "day-trader" at issue was "Israel's largest brokerage house" that makes "thousands of trades a day for many customers."); *Farhar v. Ontrak, Inc.*, No. 2:21-cv-01987-FLA (Ex), 2021 WL 2980589, at *1, *4 (C.D. Cal. July 13, 2021) (the movant who engaged in high-frequency trading filed a notice of non-opposition to competing movant's motion for appointment as lead plaintiff, removing himself from contention for lead plaintiff); *Hurst*, 2020 WL 7025085, at *3, *6 (while movants were day traders, they were disqualified because they sold off nearly their entire position "the day of the alleged corrective disclosure" and their "losses derive[d] from purchases made after the fraud's disclosure[.]"); *Applestein v. Medivation Inc*, No. C 10-00998 MHP, 2010 WL 3749406, at *3 (N.D. Cal. Sept. 20, 2010) (in addition to being a day trader, the movant also admitted that his "volume of trades was a product of his using E-trade, an online brokerage house, as his broker").

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

demonstrates just how "typical" it was for an investor of SoundHound stock to have entered and exited their position with frequency. Trust/Dave Opp. 10; *see also* Apton Decl., Ex. A, at 5-7, ECF No. 21-2; Apton Decl., Ex. B, at 2-4, ECF No. 21-3; Omoto Decl., Ex. B, at 3-96, ECF No. 10-3; Omoto Decl., Ex. C, at 2-84, ECF No. 10-4. Given the prevalence of this strategy, an investor who "alternate[s] between purchases and sales throughout the class period . . . . is not atypical in a class that contains . . . numerous sophisticated [ ] investors." *In re Petrobras Sec. Litig.*, 312 F.R.D. 354, 360 (S.D.N.Y. 2016), *aff'd in part, vac'd in part on other grounds by* 862 F.3d 250 (2d Cir. 2017).

Moreover, the timing and frequency of Ramiz's trades does not mean he did not rely on publicly available information when he bought and sold SoundHound shares. In *In re Regions Morgan Keegan Closed-End Fund Litig.*, the court appointed a high frequency trader as lead plaintiff and found that he was entitled to the fraud-on-the-market presumption of reliance set forth in *Basic, Inc. v. Levinson*, 485 U.S. 224 (1988). No. 07-02830, MDL 2009, 2010 WL 5173851, at *9-10 (W.D. Tenn. Dec. 15, 2010). Other courts, like *Regions*, have found that investors employing so-called "day-trading" strategies rely on the integrity of the market (*i.e.*: that the market price of a security will incorporate public information) and can therefore avail themselves of the "fraud on the market" presumption of reliance available to other investors. *See e.g. In re UTStarcom, Inc. Sec. Litig.*, No. C 04-04908 JW, 2010 WL 1945737, at *7, *12 (N.D. Cal. May 12, 2010) (appointing alleged day trading lead plaintiff as class representative because he relied on publicly available information in deciding to purchase and sell stock and he retained shares at the end of the class period); *Crossen v. CV Therapeutics*, No. C 03-03709 SI, 2005 WL 1910928, at *5 (N.D. Cal. Aug. 10, 2005) (appointing a day trader as a class representative and determining that since he relied on the integrity of the market; he was thus entitled to a presumption of reliance); *Serafimov v. Netopia, Inc.*, No. C-04-03364 RMW, 2004 WL 7334061, at *5 (N.D. Cal. Dec. 3, 2004) (appointing day trader as lead plaintiff and finding that "the Ninth Circuit has held that day traders suffer as do other traders under fraud-on-the-market-theory."); *In re Royal Ahold N.V. Sec.*

9

*& ERISA Litig.*, 219 F.R.D. 343, 354 (D. Md. 2003) (appointing day trader as lead plaintiff and finding that "where false information and misleading omissions pollute the market, all types of investors are injured.").[5]

## VI.   RAMIZ'S SELECTION OF THE FARUQI FIRM AS LEAD COUNSEL SHOULD BE APPROVED

Ramiz has selected the Faruqi Firm to be Lead Counsel for the Class.  The Faruqi Firm is a minority-owned and woman-owned[6] law firm, and, as reflected in the firm's resume, possesses extensive experience successfully litigating complex class actions on behalf of plaintiffs, including securities class actions.  *See* Opening Brief 11-12; Omoto Decl., Ex. E, Faruqi Firm resume (ECF No. 10-6).

## VII.   CONCLUSION

Accordingly, Ramiz respectfully requests that the Court: (1) appoint Ramiz as Lead Plaintiff for the Action; (2) approve his selection of the Faruqi Firm as Lead Counsel; and (3) grant such other relief as the Court may deem just and proper.

Dated:  June 17, 2025

Respectfully submitted,

By: /s/ *Lisa T. Omoto*
   Lisa T. Omoto SBN 303830

**FARUQI & FARUQI, LLP**
1901 Avenue of the Stars, Suite 1060
Los Angeles, CA 90067

---

[5] The authorities competing movants use to contest the presumption of reliance afforded to Ramiz are easily distinguishable.  For example, in *Scheller v. Nutanix, Inc.*, the court disqualified a movant who purchased the shares subject to "put options contracts" because he would be unable "to prove the fraud-on-the-market presumption of reliance[.]" No. 19-cv-01651-WHO, 2021 WL 2410832, at *5 (N.D. Cal. June 10, 2021).  Likewise, in *In re Petrobras Securities Litigation*, in addition to being a "group clearly assembled for the sole purpose of participating in . . . litigation," one of its members only had transactions in "common American Depository Shares" and made its purchases "after partial disclosures were made . . . ."  104 F. Supp. 3d 618, 623 (S.D.N.Y. 2015).  In *In re Peregrine Systems, Inc. Securities Litigation*, the movant's reliance was challenged on the basis that he made purchases in "private transactions."  No. CIV.02 CV 870-J(RBB), 2002 WL 32769239, at *6 (S.D. Cal. Oct. 11, 2002).
[6] *See* Omoto Decl., Ex. F (ECF No. 10-7).

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**

Telephone: 424-256-2884
Facsimile: 424-256-2885
E-mail: lomoto@faruqilaw.com

James M. Wilson, Jr. (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
685 Third Avenue, 26th Floor
New York, NY 10017
Telephone: 212-983-9330
Facsimile: 212-983-9331
Email: jwilson@faruqilaw.com

Robert W. Killorin (*pro hac vice* forthcoming)
**FARUQI & FARUQI, LLP**
3565 Piedmont Road NE Building Four
Suite 380
Atlanta, GA 30305
Telephone: 404-847-0617
Facsimile: 404-506-9534
Email: rkillorin@faruqilaw.com

*Attorneys for [Proposed] Lead Plaintiff
Samih Ramiz and [Proposed] Lead
Counsel for the putative Class*

11

**SAMIH RAMIZ'S REPLY MEMORANDUM OF POINTS AND AUTHORITIES IN FURTHER SUPPORT OF HIS MOTION FOR APPOINTMENT AS LEAD PLAINTIFF AND APPROVAL OF LEAD COUNSEL AND IN OPPOSITION TO COMPETING MOTIONS; Case No. 5:25-cv-02915-RFL**