JORDAN ETH (CA SBN 121617)
JEth@mofo.com
RYAN M. KEATS (CA SBN 296463)
RKeats@mofo.com
MORRISON & FOERSTER LLP
425 Market Street
San Francisco, California  94105-2482
Telephone: 415.268.7000
Facsimile: 415.268.7522

JAMES R. HANCOCK (CA SBN 293786)
JHancock@mofo.com
MORRISON & FOERSTER LLP
755 Page Mill Road
Palo Alto, California  94304-1018
Telephone: 650.813.5600
Facsimile: 650.494.0792

*Attorneys for Defendants SoundHound AI, Inc.,
Keyvan Mohajer, and Nitesh Sharan*

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| ST. JOHN FAMILY TRUST, PAYAL DAVE, and JEAN LUZINCOURT, Individually and on Behalf of All Others Similarly Situated,<br><br>Plaintiffs,<br><br>v.<br><br>SOUNDHOUND AI, INC., KEYVAN MOHAJER, and NITESH SHARAN,<br><br>Defendants. | Case No.:  3:25-cv-02915-RFL<br><br>**DEFENDANTS' NOTICE OF MOTION AND MOTION TO DISMISS PLAINTIFFS' AMENDED CLASS ACTION COMPLAINT**<br><br>Date: April 28, 2026<br>Time: 10:00 a.m.<br>Ctrm: Courtroom 15 – 18th Floor<br><br>Date Filed: March 28, 2025<br>Trial Date: None Set |

## NOTICE OF MOTION AND MOTION

PLEASE TAKE NOTICE that on April 28, 2026, at 10:00 a.m., or as soon thereafter as the matter may be heard, in the Courtroom of the Honorable Rita F. Lin, located at 450 Golden Gate Avenue, San Francisco, California 94102, Courtroom 15, 18th Floor, Defendants SoundHound AI, Inc. ("SoundHound" or the "Company"), Keyvan Mohajer, and Nitesh Sharan (the "Individual Defendants," and together with SoundHound, "Defendants") will, and hereby do, move under Federal Rules of Civil Procedure 8, 9(b), and 12(b)(6), as well as the Private Securities Litigation Reform Act ("Reform Act"), to dismiss the Amended Class Action Complaint (the "Complaint") filed by Plaintiffs St. John Family Trust, Payal Dave, and Jean Luzincourt on October 1, 2025. This motion to dismiss is based on this notice, the accompanying Memorandum of Points and Authorities, the Declaration of James R. Hancock ("Hancock Decl.") and attached exhibits ("Exs. 1-12"), Defendants' Request for Consideration of Documents Incorporated into Complaint and for Judicial Notice, and such other argument and materials as may be presented before this motion is taken under submission.

## ISSUES TO BE DECIDED

1.    **Material falsity**. Whether Plaintiffs' claim under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") should be dismissed because Plaintiffs fail to plead particularized facts showing that Defendants made a materially false or misleading statement.

2.    **Scienter**. Whether Plaintiffs' Section 10(b) claim should be dismissed on the additional, independent ground that Plaintiffs fail to plead particularized facts giving rise to a "strong inference" that Defendants made any challenged statement with scienter.

3.    **Loss causation**. Whether Plaintiffs' Section 10(b) claim should be dismissed on the additional, independent ground that Plaintiffs fail to plead loss causation with particularity.

4.    **Control-person liability**. Whether Plaintiffs' control-person claim under Section 20(a) of the Exchange Act should be dismissed given Plaintiffs' failure to plead a predicate violation of the securities laws.

**TABLE OF CONTENTS**

**Page**

I.    INTRODUCTION ................................................................................................. 1

II.   BACKGROUND ................................................................................................. 1

    A.    SoundHound's Business ......................................................................... 1

    B.    SoundHound's Strategic Acquisitions ................................................... 2

    C.    SoundHound Disclosed Material Weaknesses in Its Internal Controls ................... 2

    D.    SoundHound's 2024 10-K Updates the Accounting for Amelia ........................... 3

    E.    Plaintiffs' Securities Fraud Allegations ................................................. 4

III.  PLAINTIFFS MUST MEET HEIGHTENED PLEADING STANDARDS ..................... 4

IV.   PLAINTIFFS FAIL TO PLEAD A MATERIALLY FALSE STATEMENT ................... 5

    A.    Plaintiffs Fail to Show the Internal Control Statements Were False ....................... 5

        1.    Plaintiffs Fail to Plead Admissions ........................................... 5

        2.    Plaintiffs Fail to Plead Falsity Based on Their CWs ................................. 6

    B.    Plaintiffs Fail to Show the Amelia Accounting Was Materially False ..................... 7

    C.    Plaintiffs Fail to Plead Falsity of the Opinion Statements ..................................... 8

V.    PLAINTIFFS FAIL TO PLEAD SCIENTER ............................................................ 9

    A.    The CW Allegations Do Not Support Any Inference of Scienter ........................... 10

    B.    The Stock Sale Allegations Do Not Support Any Inference of Scienter .............. 10

    C.    Plaintiffs Fail to Plead Scienter Based on Access to Information ......................... 11

    D.    Plaintiffs Fail to Plead Scienter Based on Routine Business Objectives ............... 12

    E.    Plaintiffs Fail to Plead Scienter Under the Core Operations Theory ..................... 12

    F.    Plaintiffs Fail to Plead Scienter Based on Accounting Errors ............................... 13

    G.    Plaintiffs Fail to Plead a Cogent and Compelling Theory of Fraud....................... 14

VI.   PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION ................................................ 14

VII.  PLAINTIFFS FAIL TO PLEAD A CONTROL-PERSON CLAIM .............................. 15

VIII. CONCLUSION .................................................................................................. 15

## <u>TABLE OF AUTHORITIES</u>

**Page(s)**

**Cases**

*Applestein v. Medivation, Inc.*,
861 F. Supp. 2d 1030 (N.D. Cal. 2012),
*aff'd*, 561 F. App'x 598 (9th Cir. 2014) ...................................................................................... 10

*Bell Atl. Corp. v. Twombly*,
550 U.S. 544 (2007) ....................................................................................................................... 4

*In re BofI Holding, Inc. Sec. Litig.*,
977 F.3d 781 (9th Cir. 2020) ....................................................................................................... 15

*Cai v. Visa Inc.*,
No. 24-cv-08220-NW (N.D. Cal. Dec. 10, 2025) ....................................................................... 15

*Carr v. Zosano Pharma Corp.*,
2021 WL 3913509 (N.D. Cal. Sept. 1, 2021) ............................................................................. 12

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
856 F.3d 605 (9th Cir. 2017) ......................................................................................................... 9

*City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*,
2013 WL 6441843 (N.D. Cal. Dec. 9, 2013) .............................................................................. 13

*In re Cloudera, Inc. Sec. Litig.*,
121 F.4th 1180 (9th Cir. 2024) ...................................................................................................... 4

*In re Cutera, Inc. Sec. Litig.*,
2025 WL 2782916 (N.D. Cal. Sept. 30, 2025) ............................................................................. 9

*Espy v. J2 Glob., Inc.*,
99 F.4th 527 (9th Cir. 2024) ........................................................................................................ 13

*In re Fusion-io, Inc. Sec. Litig.*,
2015 WL 661869 (N.D. Cal. Feb. 12, 2015) ................................................................................. 6

*Hemmer Grp. v. SouthWest Water Co.*,
527 F. App'x 623 (9th Cir. 2013) .................................................................................................. 8

*Hoang v. ContextLogic, Inc.*,
2023 WL 6536162 (N.D. Cal. Mar. 10, 2023) ............................................................................ 10

*Kang v. PayPal Holdings, Inc.*,
620 F. Supp. 3d 884 (N.D. Cal. 2022) ........................................................................................ 10

*Kipling v. Flex Ltd.*,
  2020 WL 7261314 (N.D. Cal. Dec. 10, 2020),
  *aff'd* 2021 WL 6101391 (9th Cir. Dec. 21, 2021)................................................................. 7

*Lipton v. Pathogenesis Corp.*,
  284 F.3d 1027 (9th Cir. 2002)....................................................................................... 12

*Metzler Inv. GmbH v. Corinthian Colls., Inc.*,
  540 F.3d 1049 (9th Cir. 2008)................................................................................. *passim*

*Nguyen v. Endologix, Inc.*,
  962 F.3d 405 (9th Cir. 2020)........................................................................................... 9

*In re NVIDIA Corp. Sec. Litig.*,
  768 F.3d 1046 (9th Cir. 2014)....................................................................................... 14

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
  575 U.S. 173 (2015)........................................................................................................ 8

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
  759 F.3d 1051 (9th Cir. 2014)............................................................................... 4, 10, 12

*Police Ret. Sys. v. Intuitive Surgical, Inc.*,
  2012 WL 1868874 (N.D. Cal. May 22, 2012),
  *aff'd*, 759 F.3d 1051 (9th Cir. 2014) ............................................................................ 12

*Prodanova v. H.C. Wainwright & Co., LLC*,
  993 F.3d 1097 (9th Cir. 2021)............................................................................... 4, 14, 15

*Ramos v. Comerica Inc.*,
  2024 WL 2104398 (C.D. Cal. Apr. 12, 2024) ................................................................. 15

*In re Rigel Pharms., Inc. Sec. Litig.*,
  697 F.3d 869 (9th Cir. 2012)..................................................................................... 12, 14

*Ronconi v. Larkin*,
  253 F.3d 423 (9th Cir. 2001).......................................................................................... 11

*In re Seagate Tech. Holdings PLC Sec. Litig.*,
  No. 23-cv-03431-RFL (N.D. Cal. Aug. 8, 2024)............................................................... 8

*Sneed v. Talphera, Inc.*,
  147 F.4th 1123 (9th Cir. 2025)..................................................................................... 5, 9

*Tellabs, Inc. v. Makor Issues & Rights, Ltd.*,
  551 U.S. 308 (2007) .................................................................................................... 9, 14

*Wanca v. Super Micro Comput., Inc.*,
  2018 WL 3145649 (N.D. Cal. June 27, 2018) .................................................................. 9

*Weston Fam. P'ship LLLP v. Twitter, Inc.*,
    29 F.4th 611 (9th Cir. 2022)........................................................................................... 4

*In re Wet Seal, Inc. Sec. Litig.*,
    518 F. Supp. 2d 1148 (C.D. Cal. 2007)....................................................................... 13

*Wochos v. Tesla, Inc.*,
    985 F.3d 1180 (9th Cir. 2021)..................................................................................... 15

*The Wu Grp. v. Synopsys, Inc.*,
    2005 WL 1926626 (N.D. Cal. Aug. 10, 2005)............................................................. 10

*Yourish v. Cal. Amplifier*,
    191 F.3d 983 (9th Cir. 1999).......................................................................................... 5

*Zucco Partners, LLC v. Digimarc Corp.*,
    552 F.3d 981 (9th Cir. 2009)................................................................... 6, 10, 12, 13

**Statutes**

15 U.S.C. § 78u-4 .................................................................................................................. 4

## I.    INTRODUCTION

In 2023, SoundHound—a global leader in conversational AI—disclosed material weaknesses in its internal control over financial reporting. From that point forward, SoundHound's regular quarterly reports provided updates about its remediation efforts. In March 2025, SoundHound said that the material weaknesses continued, and it corrected errors in accounting for an acquisition. The stock price barely reacted and quickly rebounded. Nevertheless, Plaintiffs then filed a securities class action, alleging that SoundHound had lied about its remediation efforts and misrepresented various accounting line items. For three independent reasons, Plaintiffs' allegations fail to meet the stringent standards for pleading securities fraud.

*First*, Plaintiffs fail to plead any material misrepresentations. According to Plaintiffs, SoundHound admitted to fraud in its March 2025 10-K. Those "admissions" do not exist. Rather, SoundHound's 10-K reiterated the status of remediation efforts disclosed in earlier filings. As for the accounting, Plaintiffs fail to show that any of the errors were material or allege what anyone at SoundHound believed about the accounting when the challenged estimates were made.

*Second*, Plaintiffs fail to plead the required strong inference of fraudulent intent. Plaintiffs fail to allege any facts about what any of the Defendants knew, overstate Defendants' stock sales, and offer only the same boilerplate allegations that are routinely rejected in the Ninth Circuit.

*Third*, Plaintiffs fail to plead loss causation. Plaintiffs must plead a significant and sustained stock drop after the truth about the alleged fraud was revealed. Plaintiffs plead neither.

The Ninth Circuit has repeatedly rejected similar allegations, including in *Align*, *Yourish*, *Zucco*, *Metzler*, and *Tesla*. The Complaint should be dismissed.

## II.    BACKGROUND

### A.    SoundHound's Business

SoundHound is a global leader in conversational intelligence, offering Voice AI solutions to businesses. (Hancock Decl., Ex. 2 at 1.) Founded in 2005, the Company is headquartered in Santa Clara. (¶¶ 15, 37.)[1] Keyvan Mohajer has served as its CEO from the start. (¶ 16.) Nitesh Sharan,

---

[1] Citations to "¶ _" are references to the paragraphs in the Complaint. "Stmts. _" refer to the numbered statements in Plaintiffs' chart of alleged misstatements (ECF 58).

formerly an executive at Nike, serves as its CFO. (¶ 17.)

### B.    SoundHound's Strategic Acquisitions

In 2024, SoundHound engaged in a series of strategic acquisitions. In January, SoundHound acquired Synq3, a leading provider of Voice AI and technology solutions to the restaurant industry. (¶ 61; Hancock Decl., Ex. 5 at 8.) In June, SoundHound acquired Allset, another Voice AI company operating a food ordering platform. (¶ 62; Hancock Decl., Ex. 5 at 8.) In August, SoundHound acquired Amelia AI, which developed autonomous AI agents. (¶ 64; Hancock Decl., Ex. 5 at 14.) Amelia was a complex corporate entity consisting of fifteen subsidiaries. (¶ 63.)

SoundHound accrued $105.691 million in goodwill—a non-cash bookkeeping entry—from Amelia. (¶ 130; Hancock Decl., Ex. 5 at 16.) SoundHound also cautioned investors, "[a]s the Company finalizes the estimation of the fair value of the assets acquired and liabilities assumed, additional adjustments to the amount of goodwill may be necessary." (*Id.* at 23.)

### C.    SoundHound Disclosed Material Weaknesses in Its Internal Controls

On November 15, 2023—months before the start of the Class Period—SoundHound disclosed that it had not designed and maintained effective financial controls in response to the risks of material misstatement. (¶ 75; Hancock Decl., Ex. 1 at 51.) That 10-Q included pages of details about the specific weaknesses in internal controls, including internal controls for "segregation of duties" and "appropriate accounting for complex financing transactions." (*Id.* at 51-54.) SoundHound described its remediation plan and cautioned investors that remediation was in process but would not be complete "until management completes the design and implementation of the measures described above, the controls operate for a sufficient period of time, and management has concluded, through testing, that the controls are effective." (*Id.* at 52; ¶ 76.)

Throughout 2024, SoundHound updated investors about the status of its material weaknesses and described its ongoing remediation efforts. In March, SoundHound explained that it had "engaged a third party to perform a risk assessment," "completed a segregation of duties assessment," and "completed the implementation of an automated month and quarter-end accounting close workflow tool." (Hancock Decl., Ex. 2 at 117; ¶ 109.) In May and August, SoundHound added that "improvements have been implemented in tool utilization to strengthen

the segregation of duties." (Hancock Decl., Ex. 3 at 51, Ex. 4 at 56-57; ¶¶ 113, 118.) In November, SoundHound reiterated its previous updates and said it had "hired personnel with expertise in risk assessment and internal controls." (Hancock Decl., Ex. 5 at 60-61; ¶ 122.)

In each of its quarterly filings, SoundHound reiterated that its remediation efforts were "in progress" and that its material weaknesses "will not be considered remediated" until additional design, implementation, and testing were done. (Hancock Decl., Ex. 3 at 50-51, Ex. 4 at 56-57, Ex. 5 at 60-61, 64.) SoundHound said, "elements of our remediation plan can only be accomplished over time," and it cautioned that it "may identify additional material weaknesses in the future." (*Id*.)

### D. SoundHound's 2024 10-K Updates the Accounting for Amelia

On March 4, 2025, SoundHound said that it needed a short extension of time to file its annual report for fiscal year 2024 due to the complexity of accounting for its recent acquisitions. (¶ 98; Hancock Decl., Ex. 7.) SoundHound also reiterated that, "[a]s previously disclosed, the Company has identified material weaknesses in its internal control over financial reporting. These material weaknesses continue to exist as of December 31, 2024." (*Id.*)

On March 11, 2025, SoundHound filed its Form 10-K, providing further updates on its internal controls and remediation efforts. (¶¶ 100, 103.) Once again, the Company advised the market that its material weaknesses persisted and described its ongoing efforts to address those issues. (*Id.*; Hancock Decl., Ex. 8 at 128-29.) SoundHound also disclosed that its rapid business growth had resulted in additional material weaknesses as of December 31, 2024. (*Id.*) In that same filing, SoundHound corrected errors in the accounting for the Amelia acquisition. As it had cautioned in earlier disclosures, the Company adjusted the amount of goodwill from the acquisition. (*Compare* Hancock Decl., Ex. 3 at 17 *with* ¶ 103, *and* Hancock Decl., Ex. 8 at 55.)

Following SoundHound's March 4 notice of late filing, analysts expressed concern that the Company might restate its earnings to show greater losses. (¶ 136.) That day, the stock fell to $9.72 from the prior close of $10.32. (Hancock Decl. ¶ 32.) After SoundHound filed its Form 10-K on March 11—without reporting any earnings adjustments—the stock closed at $8.54, up $0.03 from the opening price and down just $0.03 from the previous day's close. (¶ 137; Hancock Decl. ¶ 33.) The next day, it closed at $9.13, and by March 14, it rebounded to $10.34. (Hancock Decl. ¶ 33.)

### E.    Plaintiffs' Securities Fraud Allegations

Two weeks later, Plaintiffs filed suit. (ECF 1.) On October 1, 2025, Plaintiffs filed the Complaint, purporting to represent a class of persons who acquired SoundHound securities from March 1, 2024, through March 11, 2025 (the "Class Period"). (¶ 1.) Plaintiffs assert two claims under the Exchange Act: (1) a Section 10(b) claim against all Defendants; and (2) a Section 20(a) claim against Mr. Mohajer and Mr. Sharan. (¶¶ 1, 201-16.)

Plaintiffs challenge 13 statements in SoundHound's SEC filings during the Class Period. (ECF 58.) According to Plaintiffs, SoundHound lied about the status of its remediation efforts and misrepresented the accounting for the Amelia acquisition. (¶ 8.)

### III.    PLAINTIFFS MUST MEET HEIGHTENED PLEADING STANDARDS

The elements of a Rule 10b-5 claim include, among other things, (1) a material misrepresentation or omission, (2) scienter, and (3) loss causation. *Weston Fam. P'ship LLLP v. Twitter, Inc.*, 29 F.4th 611, 619 (9th Cir. 2022). Plaintiffs must meet Rule 8's plausibility standard, which requires more than "conclusory" and "speculative" allegations. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007). Although properly alleged facts are assumed to be true, the court does not "indulge unwarranted inferences." *Metzler Inv. GmbH v. Corinthian Colls., Inc.*, 540 F.3d 1049, 1064-65 (9th Cir. 2008). In addition, Plaintiffs must "satisfy both the pleading requirements of the PSLRA and the heightened pleading standard of Rule 9(b), which requires that the complaint 'state with particularity the circumstances constituting fraud.'" *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 759 F.3d 1051, 1057-58 (9th Cir. 2014).

To plead falsity, Plaintiffs must identify each allegedly misleading statement and state with particularity "what is false or misleading about the purportedly fraudulent statement, and why it is false." *In re Cloudera, Inc. Sec. Litig.*, 121 F.4th 1180, 1187 (9th Cir. 2024). A plaintiff "cannot rely on hindsight; rather, it must explain why the statements were false or misleading at the time they were made." *Id*. For scienter, Plaintiffs must allege particularized facts "giving rise to a strong inference that the defendant acted with the required state of mind," 15 U.S.C. § 78u-4(b)(2)(A), which is "an intent to deceive, manipulate, or defraud . . . or deliberate recklessness." *Prodanova v. H.C. Wainwright & Co., LLC*, 993 F.3d 1097, 1106 (9th Cir. 2021). Deliberate recklessness is

"an *extreme* departure from the standards of ordinary care . . . which presents a danger of misleading buyers or sellers that is either known to the defendant or is so *obvious* that the actor must have been aware of it." *Id.* (emphasis in original). The inference of scienter must be "cogent and at least as compelling as any opposing inference one could draw from the facts alleged." *Id.* Lastly, to plead loss causation, "the complaint must allege that the defendant's share price fell significantly after the truth became known." *Metzler*, 540 F.3d at 1062.

## IV.    PLAINTIFFS FAIL TO PLEAD A MATERIALLY FALSE STATEMENT

Plaintiffs fail to meet their burden to plead particularized allegations of contemporaneous facts showing statements were false when made. *Yourish v. Cal. Amplifier*, 191 F.3d 983, 993-94 (9th Cir. 1999). To do so, "Plaintiffs must demonstrate that a particular statement, when read in light of all the information then available to the market, or a failure to disclose particular information, conveyed a false or misleading impression." *Sneed v. Talphera, Inc.*, 147 F.4th 1123, 1131 (9th Cir. 2025). Plaintiffs fail to meet those standards.

### A.    Plaintiffs Fail to Show the Internal Control Statements Were False

Plaintiffs challenge nine statements related to SoundHound's internal controls. (Stmts. 1-9.) According to Plaintiffs, those statements were all false based on (1) SoundHound's purported admissions that it had not implemented the identified remediation actions; and (2) statements from three confidential witnesses ("CWs"). (¶¶ 110, 112, 114, 117, 119, 121, 123, 125, 127.)

#### 1.    Plaintiffs Fail to Plead Admissions

Plaintiffs allege that all the challenged internal control statements were false because SoundHound "admitted at the end of the Class Period that it had not performed" the remediation efforts disclosed in earlier quarters. (¶¶ 110, 112, 114, 117, 119, 121, 123, 125, 127.) In the Ninth Circuit, later statements admit falsity only where they are of the "I knew it all along" variety and specifically contradict earlier statements. *Yourish*, 191 F.3d at 996. In *Yourish*, a later statement that heavy shipments to Southeast Asia would not repeat did not admit the falsity of earlier statements about the strength of international sales. *Id.*

Plaintiffs come nowhere close to pleading admissions here. According to Plaintiffs, SoundHound must have misstated the status of remediation efforts when it said that certain specific

actions had been "completed" because SoundHound later reiterated that material weaknesses continued to exist. But the fact that material weaknesses persisted does not mean that the specified remediation steps weren't completed. Before the Class Period even began, SoundHound disclosed material weaknesses and said its internal control over financial reporting was not effective. (¶ 75; Hancock Decl., Ex. 1 at 51-54.) Throughout the Class Period—in the same filings containing the challenged statements—SoundHound repeatedly warned that it was still "in the process" of remediation, it "has not yet remediated" the material weaknesses, and the material weaknesses would not be remediated until the controls operated for a sufficient time and management concluded, through testing, that they were effective. (¶¶ 109, 113, 118, 122; Hancock Decl., Ex. 2 at 30, 117, Ex. 3 at 51, Ex. 4 at 56-57, Ex. 5 at 60-61.) Far from an "admission" that those earlier statements were false, SoundHound's 2024 10-K provided an update on the remediation efforts and reiterated that the material weaknesses "continue to exist as of December 31, 2024." (*Compare id. with* ¶¶ 100, 103; Hancock Decl., Ex. 8 at 128-29.) SoundHound's continued and consistent disclosures are not "admissions" that any earlier statements were false when made.

### 2. Plaintiffs Fail to Plead Falsity Based on Their CWs

Plaintiffs also attempt to plead falsity based on statements attributed to three CWs. (¶¶ 18-20.) In the Ninth Circuit, CW allegations must clear two hurdles. First, for the CWs to be reliable, they must be "described with sufficient particularity to support the probability that a person in the position occupied by the source would possess the information alleged." *Zucco Partners, LLC v. Digimarc Corp.*, 552 F.3d 981, 995 (9th Cir. 2009). CW allegations are unreliable when they rely on hearsay or lack "sufficient factual support." *In re Fusion-io, Inc. Sec. Litig.*, 2015 WL 661869, at *18, 19 (N.D. Cal. Feb. 12, 2015). Second, the CW statements must themselves be indicative of falsity. *Zucco*, 552 F.3d at 995. Plaintiffs' CW accounts fail to clear either hurdle.

First, Plaintiffs fail to allege that the CWs were in positions to possess information about SoundHound's internal controls or remediation efforts. None of the CWs even purports to have had any responsibility for SoundHound's internal controls, involvement in efforts to remediate SoundHound's material weaknesses, or conversations with anyone at SoundHound at any time regarding any of those topics. That is unsurprising given that CW1 was an operations manager who

reported to the Director of Restaurants, while CW2 and CW3 were low-level accountants who were not even employed at SoundHound for much of the Class Period. (¶¶ 18-20.)

The CWs' inapt positions render their statements unreliable. *See Kipling v. Flex Ltd.*, 2020 WL 7261314, at *11 (N.D. Cal. Dec. 10, 2020), *aff'd* 2021 WL 6101391 (9th Cir. Dec. 21, 2021). In *Flex*, plaintiffs challenged statements about Flex's contract with Nike. The Ninth Circuit affirmed dismissal, holding that the CW statements did not plead falsity, because the CWs "had no routine interaction with" the relevant project and lacked firsthand knowledge of facts contradicting the executives' public statements. 2021 WL 6101391, at *1. So too here.

Second, the CWs do not allege that any challenged statement was false. None of the CWs contradicts any of SoundHound's disclosures about its remediation efforts. Instead, CW1 asserts only that SoundHound was often late paying vendors, including "a lot of missed payments" to a call center in Mexico, because finance was waiting for CEO approval. (¶¶ 84-85.) So what?

The remaining CW allegations are about Amelia and likewise fail to demonstrate falsity. (¶¶ 87-89.) According to CW2, Amelia's CFO—not SoundHound's—was reimbursed for a $20,000 trip without the receipts. (¶ 88.) But Plaintiffs fail to allege any details about when the reimbursement occurred, explain how that contradicts any of the challenged statements, or plead any facts to establish CW2's personal knowledge. Plaintiffs' allegation that CW3 was hired because Amelia did not have enough people is as unremarkable as it is irrelevant. (¶ 87.) And the CWs' vague allegations about Amelia's "manual" and "inconsistent" processes before the merger say nothing about SoundHound's internal controls or its remediation efforts. (¶ 89.) Finally, Plaintiffs resort to speculation and claim that, because Amelia had material weaknesses and was "isolated" after the merger, SoundHound failed to disclose that it "would be impacted by the same issues." (¶ 90; *see also* ¶¶ 91-96.) To the contrary, SoundHound transparently disclosed Amelia's material weaknesses and said they "had not yet been successfully remediated." (Hancock Decl., Ex. 5 at 64.) Plaintiffs fail to plead the falsity of any challenged statement based on any of the CWs.

**B.    Plaintiffs Fail to Show the Amelia Accounting Was Materially False**

Plaintiffs challenge four statements (or tables) about the accounting for the Amelia acquisition. (Stmts. 10-13.) According to Plaintiffs, "(i) the contingent earnout consideration of the

transaction, (ii) Amelia's liabilities, including accounts payable, accrued liabilities, deferred revenue, and deferred income tax liability, and therefore (iii) the Goodwill acquired in the Amelia Acquisition" were materially false or misleading. (¶ 131.) Plaintiffs fail to show that any of those minor accounting errors were materially false or misleading.

In the Ninth Circuit, even allegations of "improper accounting requiring a restatement" do not, by themselves, establish material falsity. Rather, "plaintiff must show with particular[ity] how the accounting irregularities affected the company's financial statements and whether they were material in light of the company's overall financial position." *Hemmer Grp. v. SouthWest Water Co.*, 527 F. App'x 623, 626 (9th Cir. 2013). As this Court stated, "alleged GAAP violations may qualify as actionable misrepresentations *when they are significant*." *In re Seagate Tech. Holdings PLC Sec. Litig.*, No. 23-cv-03431-RFL (N.D. Cal. Aug. 8, 2024), ECF 96 at 5 (emphasis added).

Plaintiffs fail to show that any of the non-cash adjustments to the accounting for Amelia were material in light of SoundHound's overall financial position. First, Plaintiffs purport to plead material falsity on the basis that SoundHound "admitted" the errors. (¶ 107.) The opposite is true. SoundHound told investors that the adjustments had "an immaterial impact." (Hancock Decl., Ex. 8 at 55.) And its independent auditors at PricewaterhouseCoopers signed off. (*Id.* at 67.) Second, Plaintiffs rely on SAB 99—which is neither a statute nor a regulation—to assert that the error must have been material because SoundHound's goodwill was "overstated by $9.27m, or 9.05%" and its long-term income tax liability was "understated by $715,000, or 12.5%." (¶¶ 178-79.) But even SAB 99 explicitly rejects such an approach and makes clear that "exclusive reliance on [a 5% threshold] or any percentage or numerical threshold has no basis in the accounting literature or the law." (Hancock Decl., Ex. 9 at 1-2.) Plaintiffs fail to plead any facts showing that the adjustments to Amelia's accounting were material in light of SoundHound's overall financial position.

### C.    Plaintiffs Fail to Plead Falsity of the Opinion Statements

Plaintiffs also fail to meet the standards for pleading falsity of opinion statements, which include Defendants' SOX certifications and all the challenged accounting statements. (Stmts. 2, 4, 6, 8-13.) Pleading misrepresentation of an opinion requires pleading both that "the speaker did not hold the belief she professed" and that the belief was objectively untrue. *Omnicare, Inc. v. Laborers*

*Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175, 185-86 (2015); *accord City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 856 F.3d 605, 616-18 (9th Cir. 2017) (Section 10(b) claims). Plaintiffs plead no such facts here.

**SOX Certifications**. Plaintiffs say nothing about what Mohajer or Sharan knew regarding the alleged accounting errors or allege any facts showing that either of them had failed to evaluate SoundHound's internal controls at the time they signed the challenged certifications. Courts in this district have routinely rejected claims based on SOX certifications in the absence of such allegations. *See, e.g.*, *In re Cutera, Inc. Sec. Litig.*, 2025 WL 2782916, at *5-8 (N.D. Cal. Sept. 30, 2025) (dismissing claims based on SOX certifications on falsity grounds where plaintiffs failed to plead facts about what defendants knew when they signed); *Wanca v. Super Micro Comput., Inc.*, 2018 WL 3145649, at *6 (N.D. Cal. June 27, 2018) (same).

**Accounting Opinions**. Plaintiffs likewise fail to plead any facts about the basis for SoundHound's accounting. Plaintiffs ignore SoundHound's disclosure that, as it "finalizes the estimation of the fair value of the assets acquired and liabilities assumed, additional adjustments to the amount of goodwill may be necessary." (Hancock Decl., Ex. 5 at 23.) Nor do Plaintiffs allege any facts about the actual assumptions that anyone at SoundHound relied on to calculate Amelia's contingent earnout, liabilities, or goodwill. The absence of such facts is fatal. *Align*, 856 F.3d at 18.

## V.   PLAINTIFFS FAIL TO PLEAD SCIENTER

Plaintiffs' Section 10(b) claim fails for an additional, independent reason—Plaintiffs do not plead "with particularity, facts giving rise to a strong inference that the defendant[s] acted with" scienter, let alone one that is "at least as compelling as any opposing inference." *Tellabs, Inc. v. Makor Issues & Rights, Ltd.*, 551 U.S. 308, 314 (2007). As the Ninth Circuit has explained, the "'strong inference' requirement has teeth. It is an 'exacting' pleading obligation, that 'presents no small hurdle for the securities fraud plaintiff.'" *Nguyen v. Endologix, Inc.*, 962 F.3d 405, 414 (9th Cir. 2020). What's more, pleading "scienter necessarily becomes harder when the allegedly misleading statements are not flagrantly false because in those cases an innocent alternative explanation becomes more likely." *Sneed*, 147 F.4th at 1134.

Not one of Plaintiffs' allegations supports an inference of scienter. When considered

holistically, their allegations fail to plead a cogent and compelling theory of fraud.

### A.    The CW Allegations Do Not Support Any Inference of Scienter

As discussed in Section IV(A)(2) above, Plaintiffs' CWs are unreliable, and their allegations fail to show falsity. Not only that, the CWs do not even purport to have had any contact with either Mohajer or Sharan, from whom they were at least three levels removed on the organizational chart. (¶¶ 18-20.) Because they "lack first-hand knowledge regarding what the individual defendants knew or did not know," the CWs fail to show scienter. *Intuitive*, 759 F.3d at 1063; *see also Zucco*, 552 F.3d at 998.

### B.    The Stock Sale Allegations Do Not Support Any Inference of Scienter

Plaintiffs allege that stock sales by Mohajer and Sharan support scienter. But trading is "suspicious only when it is 'dramatically out of line with prior trading practices at times calculated to maximize the personal benefit from undisclosed inside information.'" *Zucco*, 552 F.3d at 1005. Plaintiffs fail to plead suspicious trading by Mohajer or Sharan.

**Mohajer's Sales**. Mohajer's trades are not suspicious for at least three reasons. First, the amount of his sales is not suspicious. Mohajer *increased* his holdings of SoundHound stock during the Class Period from 15,507,776 to 16,160,730 shares (Hancock Decl. ¶ 19), which undermines suspicion. *See, e.g.*, *Applestein v. Medivation, Inc.*, 861 F. Supp. 2d 1030, 1043 (N.D. Cal. 2012), *aff'd*, 561 F. App'x 598 (9th Cir. 2014); *Kang v. PayPal Holdings, Inc.*, 620 F. Supp. 3d 884, 901 (N.D. Cal. 2022). As for his Class Period sales, Mohajer's sales of 1,680,481 shares total less than 11% of the 15,507,776 shares that he held at the start of the Class Period. (Hancock Decl. ¶ 16.) In the Ninth Circuit, courts "typically require larger sales amounts—and corroborative sales by other defendants—to allow insider trading to support scienter." *Metzler*, 540 F.3d at 1067 (no inference of scienter for defendant who sold 37% of holdings); *see also The Wu Grp. v. Synopsys, Inc.*, 2005 WL 1926626, at *10 (N.D. Cal. Aug. 10, 2005) (38%). Plus, Plaintiffs ignore that 20% of Mohajer's sales during the Class Period were sales made to cover tax withholding and should be removed from the calculations. (Hancock Decl. ¶ 18.) "Such sales for tax reasons are not indicative of fraud." *E.g.*, *Hoang v. ContextLogic, Inc.*, 2023 WL 6536162, at *26 (N.D. Cal. Mar. 10, 2023).

Second, the timing of Mohajer's sales does not raise any inference of scienter. Contrary to

Plaintiffs' allegations, his sales were not timed "within a narrow window" before the alleged corrective disclosure in March 2025. (¶ 156.) Rather, he sold *no shares* for more than two months leading up to the end of the Class Period. (¶¶ 154, 158.) Additionally, his sales were well below the Class Period high of $24 per share. (Hancock Decl. ¶¶ 17, 34.) Over 83% of his sales were at or below $15. (Hancock Decl. ¶ 17.) The Ninth Circuit has explained that where, as here, "insiders miss the boat this dramatically, their sales do not support an inference" of scienter. *Ronconi v. Larkin*, 253 F.3d 423, 435 (9th Cir. 2001) (no scienter where seven insiders sold 69% or more of total holdings but at prices below the peak); *In re Vantive Corp. Sec. Litig.*, 283 F.3d 1079, 1094 (9th Cir. 2002) (sales not suspicious where the price rose subsequently); *In re Splash Tech. Holdings, Inc. Sec. Litig.*, 160 F. Supp. 2d 1059, 1084 (N.D. Cal. 2001) (same).

Third, Mr. Mohajer's stock sales are not "dramatically out of line" with prior trading. He sold 1.68 million shares during the Class Period as compared to 2.9 million shares in the same amount of time immediately before the Class Period. Plaintiffs misrepresent his sales to suggest otherwise—they omit 85% of his earlier sales. (*Compare* ¶ 158 *with* Hancock Decl. ¶¶ 20-21.)

**Sharan's Sales**. Plaintiffs' allegations about Sharan's trades fare even worse. First, *all of Sharan's sales were to satisfy tax withholding obligations*. (Hancock Decl. ¶ 25; Ex. 12.) That alone is dispositive. Second, the amount is not suspicious. During the Class Period, Sharan's holdings increased from 775,000 shares to over 1.5 million shares. (¶¶ 160, 163; Hancock Decl. ¶ 27.) Third, the timing is not suspicious. All his sales predate the alleged corrective disclosures by months, and most were below $9 per share—well below the Class Period high of $24. (¶ 160; Hancock Decl. ¶¶ 26, 34; Ex. 12.) Lastly, Sharan's Class Period sales are consistent with prior trading. Once again, the Complaint leaves out *half* of his earlier sales. (*Compare* ¶ 163 *with* Hancock Decl. ¶¶ 28, 30.)

Plaintiffs fail to plead any suspicious trading.

### C.    Plaintiffs Fail to Plead Scienter Based on Access to Information

Plaintiffs' conclusory allegations that Mohajer and Sharan were "personally involved in the design of" and "had personal access to information regarding internal controls" add nothing to the scienter analysis. (¶¶ 138-44.) As the Ninth Circuit has repeatedly explained, "corporate management's general awareness of the day-to-day workings of the company's business does not

establish scienter—at least absent some additional allegation of specific information conveyed to management and related to the fraud." *Metzler*, 540 F.3d at 1068; *see also Zucco*, 552 F.3d at 1000-01; *Lipton v. Pathogenesis Corp.*, 284 F.3d 1027, 1036 (9th Cir. 2002).

The allegations that Mohajer was a hardworking CEO who was "hands-on," "all-in on business," and "start[ed] his day before the crack of dawn, usually before 5 a.m." don't either. (¶¶ 145-48.) "[G]eneral allegations of defendants' 'hands-on management style' . . . are insufficient." *Police Ret. Sys. v. Intuitive Surgical, Inc.*, 2012 WL 1868874, at *24 (N.D. Cal. May 22, 2012). Plaintiffs must plead a strong inference of fraudulent intent, not indicia of a strong work ethic.

### D.    Plaintiffs Fail to Plead Scienter Based on Routine Business Objectives

Plaintiffs fail to show scienter based on allegations that SoundHound raised funds through sales of equity and wanted to increase cashflow, drive revenue through acquisitions, and lower the effective price of the Amelia acquisition. (¶¶ 150-53, 165-68.) In the Ninth Circuit, "mere generalized assertions about routine business objectives, without more, cannot support such an inference." *Zucco*, 552 F.3d at 1006. That includes "alleged desires to obtain favorable financing and to expand abroad." *Lipton*, 284 F.3d at 1038 (no scienter based on "alleged desires to obtain favorable financing"); *see also In re Rigel Pharms., Inc. Sec. Litig.*, 697 F.3d 869, 884 (9th Cir. 2012) (no scienter based on "rais[ing] capital in a stock offering"); *Carr v. Zosano Pharma Corp.*, 2021 WL 3913509, at *11 (N.D. Cal. Sept. 1, 2021) (no scienter based on "engag[ing] in regular securities offerings" and "obtain[ing] financing").

### E.    Plaintiffs Fail to Plead Scienter Under the Core Operations Theory

Plaintiffs' invocation of the core operations theory also fails. (¶¶ 169-74.) To prevail under this theory "is not easy." *Intuitive*, 759 F.3d at 1062. It requires the "rare circumstances where the nature of the relevant fact is of such prominence that it would be absurd to suggest that management was without knowledge of the matter." *Id.* at 1062.

Plaintiffs fail to allege such circumstances. They obliquely point to the "scale" of the Amelia acquisition and describe it as SoundHound's "largest and most strategic." (¶¶ 169-74.) To invoke the inference, Plaintiffs must demonstrate not the prominence of the acquisition, but the prominence of facts contradicting the challenged statements. *Id.* Plaintiffs allege no such facts.

Plaintiffs' vague allegations that Defendants oversaw and certified SoundHound's internal controls (¶ 174) and that Sharan discussed growth from acquisitions (¶ 172) are also insufficient. The Ninth Circuit has repeatedly declined to invoke the inference based on such generalized allegations. In *Espy v. J2 Global, Inc.*, 99 F.4th 527, 539 (9th Cir. 2024), statements that defendants "signed off on every acquisition" or were "obsessed with numbers" did not support an inference that they manipulated accounting. Likewise, in *Zucco*, 552 F.3d at 1000-01, allegations of closely monitored inventory numbers did not support an inference that defendants knew the data was manipulated. The less specific allegations here—that Defendants knew about acquisitions and their revenue effects—do not support an inference that Defendants knew SoundHound's statements about internal controls or the accounting for Amelia were false. The inference does not apply.

### F.    Plaintiffs Fail to Plead Scienter Based on Accounting Errors

Plaintiffs next allege that "Defendants' decision not to restate the Q3 2024 Form 10-Q financial statements bolsters scienter." (¶ 175.) Plaintiffs argue that the error required restatement and assert that Defendants instead "attempted to minimize how badly they had misstated accounting for the Amelia acquisition—and violated GAAP to do so." (¶ 182.)

In the Ninth Circuit, GAAP violations—even those that require publication of a restatement—are not enough to create a strong inference of scienter. *Zucco*, 552 F.3d at 1000. Rather, Plaintiffs must plead that "the accounting practices were so deficient . . . or an egregious refusal to see the obvious, or to investigate the doubtful, or that the accounting judgments which were made were such that no reasonable accountant would have made the same decisions if confronted with the same facts." *City of Dearborn Heights Act 345 Police & Fire Ret. Sys. v. Align Tech., Inc.*, 2013 WL 6441843, at *12 (N.D. Cal. Dec. 9, 2013).

Plaintiffs plead nothing like that here. As discussed in Section IV(C) above, the Complaint is devoid of allegations about what assumptions anyone at SoundHound used or any facts about what either Mohajer or Sharan knew about the accounting at any time. What's more, SoundHound's independent auditors issued an unqualified audit opinion (Hancock Decl., Ex. 8 at 65-67), further negating any inference of scienter. *Metzler*, 540 F.3d at 1068-69 (scienter negated where auditors did not "counsel against" the accounting); *In re Wet Seal, Inc. Sec. Litig.*, 518 F. Supp. 2d 1148,

1166 (C.D. Cal. 2007) (clean audits weigh against scienter). Plaintiffs fail to plead scienter based on a restatement that never was.

### G.    Plaintiffs Fail to Plead a Cogent and Compelling Theory of Fraud

Considered "holistically," Plaintiffs' scienter allegations are not "cogent and compelling." *Tellabs*, 551 U.S. at 324. Theories of fraud are not persuasive where they are "divorced from common experience." *Prodanova*, 993 F.3d at 1107. "[T]he PSLRA neither allows nor requires us to check our disbelief at the door." *Id.*

Plaintiffs ask the Court to suspend disbelief here. According to Plaintiffs, SoundHound identified weaknesses in its internal controls, transparently disclosed those weaknesses, and then supposedly misled investors about the progress of its remediation efforts. Plaintiffs then imagine that, at the same time SoundHound updated the market that it had identified (non-cash) accounting errors for the acquisition of Amelia, the Company chose to violate GAAP rather than call the errors a restatement—and managed to take SoundHound's auditors along for the ride. Better yet, Plaintiffs contend that Mohajer and Sharan willingly engaged in the fraudulent scheme, put their reputations and distinguished careers on the line, and risked potential civil and criminal liability. For what? The most Plaintiffs can muster are overstated allegations of stock sales that represented a small portion of Defendants' holdings. None of it makes any sense.

Plaintiffs' theory is far less compelling than the opposing nonculpable inferences: SoundHound transparently disclosed its material weaknesses, cautioned investors about the risks, and promptly updated the market when it discovered errors in its accounting for the acquisition of a "complex corporate entity consisting of 15 subsidiaries." (¶ 63.) Indeed, SoundHound's candid disclosures undermine any inference of scienter. *See In re NVIDIA Corp. Sec. Litig.*, 768 F.3d 1046, 1056-57 (9th Cir. 2014) (considering cautionary disclosures when analyzing scienter); *Rigel*, 697 F.3d at 884-85 (disclosure of adverse information negates inference of scienter).

### VI.    PLAINTIFFS FAIL TO PLEAD LOSS CAUSATION

Plaintiffs also fail to plead loss causation (¶¶ 183-87), which is another independent ground for dismissal. Plaintiffs "must allege that the defendant's share price fell significantly after the truth became known." *Metzler*, 540 F.3d at 1062. Loss causation allegations are insufficient where "a

'modest' drop in the stock price coincides with the disclosure of certain news but then recovers very shortly after." *Wochos v. Tesla, Inc.*, 985 F.3d 1180, 1197 (9th Cir. 2021).

Plaintiffs fail to meet their burden. First, Plaintiffs point to SoundHound's March 4, 2025 Form NT, announcing its 10-K would be filed late. (¶ 135.) But that was not a corrective disclosure. The filing said only that SoundHound's previously disclosed material weaknesses "continue to exist as of December 31, 2024." (¶ 98; Hancock Decl., Ex. 7.) It did not reveal any earlier statement was false and, therefore, cannot demonstrate loss causation. *In re BofI Holding, Inc. Sec. Litig.*, 977 F.3d 781, 794 (9th Cir. 2020) ("A corrective disclosure, though, must by definition reveal new information to the market."); *Metzler*, 540 F.3d at 1062-65 (disclosures did not "reveal" fraud).

Second, Plaintiffs point to SoundHound's March 11, 2025 10-K and allege a miniscule stock drop of "$0.03 per share, or 0.35%." (¶ 137.) Plaintiffs ignore that SoundHound's stock price rose throughout the day on March 11, closed at $9.13 on March 12, and then at $10.34 on March 14. (Hancock Decl. ¶¶ 31-34, Ex. 10 at 13.) The Ninth Circuit routinely affirms dismissal where, as here, the stock experienced only a modest drop and promptly recovered. For example, in *Tesla*, Plaintiffs failed to plead loss causation where the stock price dropped "3.9 percent" and rebounded "over the next week." 985 F.3d at 1187, 1197-98. The same was true in *Metzler*, where "its stock recovered very shortly [3 trading days] after the modest 10% drop." 540 F.3d at 1064-65; *see also Cai v. Visa Inc.*, No. 24-cv-08220-NW (N.D. Cal. Dec. 10, 2025), ECF 55.

The March 4 and March 11 share price declines are also insignificant in context. SoundHound's stock price frequently declined by greater amounts. (*Compare* ¶¶ 135-37 *with* Hancock Decl. ¶¶ 31-33.) Where, as here, the alleged drops are "unremarkable and well within the typical stock price movement," dismissal is appropriate because "Plaintiffs' inference of causation is implausible." *Ramos v. Comerica Inc.*, 2024 WL 2104398, at *4 (C.D. Cal. Apr. 12, 2024).

## VII.    PLAINTIFFS FAIL TO PLEAD A CONTROL-PERSON CLAIM

Because Plaintiffs failed to plead a predicate violation under Section 10(b), their Section 20(a) control person claim necessarily fails. *See Prodanova*, 993 F.3d at 1113.

## VIII.   CONCLUSION

For the foregoing reasons, the Complaint should be dismissed in its entirety.

DATED: December 12, 2025                    MORRISON & FOERSTER LLP

                                            /s/ Ryan M. Keats
                                            _____
                                            Jordan Eth
                                            Ryan M. Keats
                                            425 Market Street
                                            San Francisco, California 94105-2482
                                            Telephone: 415.268.7000
                                            Facsimile: 415.268.7522

                                            James R. Hancock
                                            755 Page Mill Road
                                            Palo Alto, California 94304-1018
                                            Telephone: 650.813.5600
                                            Facsimile: 650.494.0792

                                            *Attorneys for Defendants SoundHound AI,*
                                            *Inc., Keyvan Mohajer, and Nitesh Sharan*